*Addison,*
*January,*
1826.

Heartt
*vs.*
Chipman,
*et al.*

</div>

---

JAAZANIAH BARRETT *vs.* STEPHEN BUXTON.

<div style="text-align:right">

*Rutland,*
*January,*
1826.

</div>

A contract entered into when the obligor is in a state of intoxication, so as to deprive him of the exercise of his understanding, is voidable; and the party may, for that cause, avoid it, although the intoxication was voluntary, and not procured through the circumvention of the other party.

ASSUMPSIT, on a prommissory note, for the sum of one thousand dollars and the interest. Plea, the general issue.

The case was, the plaintiff and defendant had entered into a written contract for an exchange of certain real estate, and the note was given on that occasion, by the defendant to the plaintiff, for the difference money agreed to be paid, between the two parcels of real estate. The plaintiff afterwards executed a deed on his part, according to the contract, and tendered it to the defendant. The defendant refused to accept the deed, or pay the note.

These facts being proved on the trial of the issue, the defendant offered testimony tending to prove, that at the time of executing the said contract and note, and of making the bargain therein specified, he was *drunk,* and thereby incapacitated to judge of the nature or consequences of said bargain. But the plaintiff objecting, the court refused to admit said testimony, unless the same could be accompanied with testimony, tending to prove that the said drunkenness was procured by or at the instigation of the plaintiff. To which decision the defendant excepted.

The defendant also offered testimony tending to prove, that the farm which he had agreed to convey to the plaintiff, at the time of giving said note, was actually worth as much, or more than the premises which the plaintiff had agreed to convey to the defendant in exchange. This testimony, being objected to, the court refused to receive; and to this decision also, the defendant excepted.

A verdict was returned for the plaintiff; and the defendant now moved that the same be set aside, and for a new trial, for the reasons apparent in the exceptions aforesaid.

The counsel for the defendant, in support of the motion, relied on a recent decision of this court in *Addison county.* They

*Rutland,*
*January,*
*1826.*

Barrett
*vs.*
Buxton.

also cited 1 *Chitty's Pl.* 470, 479.----3 *Campb.* 33, *Pitt* vs. *Smith.* ----*Bull. N. P.* 172.

For the plaintiff, it was contended, that drunkenness will not relieve a man, for it is a great offence and aggravates the act done, and is no excuse for him, unless it was procured by the contrivance or management of the man who received the deed, or made the contract with him.

To avoid any contract made, or deed given by the party when drunk, would be taking advantage of his own wrong; which no man is permitted to do.----4 *Co. Rep.* 129, *Beverley's case.*----1 *Mad. Chancery,* 238.----1 *Faublanque* 60.----3 *Campb. Rep.* 35.---- 4 *Mass.* 161, *Churchill* vs. *Suter.*

The opinion of the Court was pronounced by

PRENTISS J.   This is an action upon a promissory note, executed by the defendant to the plaintiff for the sum of $1000, being the difference agreed to be paid the plaintiff on a contract for the exchange of lands.   The agreement of exchange was in writing, and the plaintiff afterwards tendered to the defendant a deed, in performance of his part of the agreement, which the defendant refused.   The defendant offered evidence to prove, that at the time of executing the note and agreement, he was intoxicated, and thereby incapable of judging of the nature and consequences of the bargain.   The court refused to admit the evidence, without proof that the intoxication was procured by the plaintiff.   The question is, whether the evidence was admissible as a defence to the action, or, in other words, whether the defendant could be allowed to set up his intoxication to avoid the contract.

This question has been already substantially decided by the court on the present circuit; but the importance of the question, and the magnitude of the demand in this case, have led us to give it further consideration.   According to *Beverley's* case, 4 Co. 123, a party cannot set up intoxication in avoidance of his contract under any circumstances.   Although *Lord Coke* admits, that a drunkard, for the time of his drunkenness, is *non compos mentis*, yet he says, "his drunkenness shall not extenuate his act or offence, but doth aggravate his offence, and doth not derogate from his act, as well touching his life, lands, and goods, as any thing that concerns him."   He makes no distinction between criminal and civil cases, nor intimates any qualification of his doctrine, on the ground of the drunkenness being procured by the contrivance of another who would profit by it. His doctrine is general, and without any qualification whatever; and connected with it, he holds, that a party shall not be allowed to stultify himself, or disable himself, on the ground of idiotcy or lunacy.   The latter proposition is supported, it is true, by two or three cases in the year books, during the reigns of Edward 3 and Henry 6 ; by *Littleton,* s. 405, who lived in the time of Hen. 6 ; and by *Stroud* vs. *Marshall, Cro. Eliz.* 398, and *Cross* vs. *Andrews, Cro. Eliz.* 622.   Sir *William Blackstone,* however,

Rutland,
January,
1826.

Barrett
vs.
Buxton.

who traces the progress of this notion, as he calls it, considers it contrary to reason, and shows that such was not the ancient common law. The *Register*, it appears, contains a writ for the alienor himself, to recover lands aliened by him during his insanity; and *Britton* states, that insanity is a sufficient plea for a man to avoid his own bond. *Fitzherbert* also contends, "that it stands with reason that a man should show how he was visited by the act of God with infirmity, by which he lost his memory and discretion for a time." *Blackstone* considers the rule as having been handed down from the loose cases in the times of Edw. 3, and Hen. 6, founded upon the absurd reasoning, that a man cannot know, in his sanity, what he did when he was *non compos mentis*; and he says, later opinions, feeling the inconvenience of the rule, have, in many points, endeavoured to restrain it. (2 *Blac. Com.* 291.) In *Thompson* vs. *Leach*, 3 *Mod.* 301, it was held, that the deed of a man *non compos mentis*, was not merely voidable, but was void *ab initio*, for want of capacity to bind himself or his property. In *Yates* vs. *Boon*, 2 *Stra.* 1104, the defendant pleaded *non est factum* to debt on articles, and upon the trial, offered to give lunacy in evidence. The chief justice at first thought it ought not to be admitted, upon the rule in *Beverley's* case, that a man shall not stultify himself; but on the authority of *Smith* vs. *Can*, in 1728, where Chief Barron *Pengelley*, in a like case admitted it; and on considering the case of *Thompson* vs. *Leach*, the chief justice suffered it to be given in evidence, and the plaintiff became nonsuit. The most approved elementary writers and compilers of the law refer to this case, and lay it down as settled law, that lunacy may be given in evidence on the plea of *non est factum*, by the party himself; and it is said to have been so ruled by Lord *Mansfield*, in *Chamberlain of London* vs. *Evans*, mentioned in note to 1 *Chit. Pl.* 470. In this country, it has been decided in several instances, that a party may take advantage of his own disability, and avoid his contract, by showing that he was insane and incapable of contracting. (*Rice* vs. *Peet*, 15, *Johns. Rep.* 503.—*Webster* vs. *Woodford*, 3 *Day's Rep.* 90.) These decisions are founded in the law of nature and of justice, and go upon the plain and true ground, that the contract of a party *non compos mentis* is absolutely void, and not binding upon him. The rule in *Beverley's* case, as to lunacy, therefore, is not only opposed to the ancient common law, and numerous authorities of great weight, but to the principles of natural right and justice, and cannot be recognized as law; and it is apprehended, that the case is as little to be regarded, as authority in respect to intoxication, which rests essentially upon the same principle.

It is laid down in *Buller's N. P.* 172, and appears to have been decided by Lord *Holt*, in *Cole* vs. *Robins*, there cited, that the defendant may give in evidence under the plea of *non est factum* to a bond, that he was made to sign it when he was so drunk that he did not know what he did. And in *Pitts* vs. *Smith*, 3 *Campb. Cas.* 33, where an objection was made to an attesting

*Rutland,*
*January,*
*1826.*

*Barrett*
*vs.*
*Buxton.*

witness being asked whether the defendant was not in a complete state of intoxication when he executed the agreement, Lord *Ellenborough* says, "you have alleged that there was an agreement between the parties; but there was no agreement, if the defendant was intoxicated in the manner supposed. He had not an agreeing mind. Intoxication is good evidence upon a plea of *non est factum* to a deed, of *non concessit* to a grant, and of *non assumpsit* to a promise." *Chitty, Selwyn,* and *Phillips* lay down the same doctrine; and Judge *Swift* in his digest says, that an agreement, signed by a man in a complete state of intoxication, is void. (1 *Chit. Pl.* 470.----*Selw. N. P.* 563.----1 *Phil. Ev.* 128.----1 *Swift's Dig.* 173.) In these various authorities, it is laid down generally, and without any qualification, that drunkenness is a defence, and no intimation is made of any distinction, founded on the intoxication being procured by the party claiming the benefit of the contract. It is true, that in *Johnson* vs. *Medlicott,* 3 *P. Wms.* 130, that circumstance was considered essential to entitle the party to relief in equity against his contract. Sir *Joseph Jekyl* held, that the having been in drink was not any reason to relieve a man against his deed or agreement, unless the party was drawn into drink by the management or contrivance of him who gained the deed. But from what is said in 1 *Fonb. Eq.* 68, it would not seem that the author considered this circumstance as indispensable. He says, equity will relieve, *especially* if the drunkenness were caused by the fraud or contrivance of the other party, and he is so excessively drunk, that he is utterly deprived of the use of his reason or understanding; for it can by no means be a serious and deliberate consent; and without this, no contract can be binding by the law of nature. In *Spiers* vs. *Higgins,* decided at the Rolls in 1814, and cited in 1 *Mad. Ch.* 304, a bill filed for a specifick performance of an agreement, which was entered into with the defendant when drunk, was dismissed with costs, although the plaintiff did not contribute to make the defendant drunk.

On principle, it would seem impossible to maintain, that a contract entered into by a party when in a state of complete intoxication, and deprived of the use of his reason, is binding upon him, whether he was drawn into that situation by the contrivance of the other party or not. It is an elementary principle of law, that it is of the essence of every contract, that the party to be bound should consent to whatever is stipulated, otherwise no obligation is imposed upon him. If he has not the command of his reason, he has not the power to give his assent, and is incapable of entering into a contract to bind himself. Accordingly *Pothier* holds, (*vol.* 1. *c.* 1, *a.* 4, *s.* 1.) that ebriety, when it is such as to take away the use of reason, renders the person who is in that condition, while it continues, unable to contract, since it renders him incapable of assent. And it seems *Heinecceus* and *Puffendorf* both consider contracts entered into under such circumstances, as invalid. By the *Scotch* law, also, an obligation granted by a person while he is in a state of abso-

*Rutland,*
*February,*
*1826.*

Barrott
*vs.*
Buxton.

lute and total drunkenness, is ineffectual, because the grantor is incapable of consent; but a lesser degree of drunkenness, which only darkens reason, is not sufficient. (*Ersk. Inst.* 447.) The author of the late excellent treatise on the principles and practice of the court of chancery, after reviewing the various cases in equity on the subject, and citing the Scotch law with approbation, observes, "the distinction thus taken seems reasonable; for it never can be said that a person absolutely drunk, has that freedom of mind, generally esteemed necessary to a deliberate consent to a contract; the reasoning faculty is for a time deposed. At law it has been held, that upon *non est factum* the defendant may give in evidence, that they made him sign the bond when he was so drunk that he did not know what he did. So a will made by a drunken man is invalid. And will a court of equity be less indulgent to human frailty? It seems to be a fraud to make a contract with a man who is so drunk as to be incapable of deliberation." (1 *Mad. Ch.* 302.) Mr. *Maddock* seems to consider it as settled, that at law, complete intoxication is a defence, and that it ought to be a sufficient ground for relief in equity; and, indeed, it would seem difficult to come to a different conclusion. As it respects crimes and torts, sound policy forbids that intoxication should be an excuse; for if it were, under actual or feigned intoxication, the most attrocious crimes and injuries might be committed with impunity. But in questions of mere civil concern, arising *ex contractu,* and affecting the rights of property merely, policy does not require that any one should derive an unjust profit from a bargain made with a person in a state of intoxication, although brought upon himself by his own fault, or that he should be a prey to the arts and circumvention of others, and be ruined, or even embarrassed, by a bargain, when thus deprived of his reason. It is a violation of moral duty, to take advantage of a man in that defenceless situation, and draw him into a contract; and if the intoxication is such as to deprive him of the use of his reason, it cannot be very material, whether it was procured by the other party, or was purely voluntary. The former circumstance would only stamp the transaction with deeper turpitude, and make it a more aggravated fraud. The evidence which was offered and rejected at the trial in the case before us, went not only to show that the defendant was so intoxicated at the time of giving the note, as to be incapable of the exercise of his understanding, but that the contract was grossly unequal and unreasonable; and, both on principle and authority, we think the evidence was admissible, and that a new trial must be granted.

<div align="right">New trial granted.</div>

*Chauncey Langdon* and *Chs. K. Williams,* for the plaintiff.
*Wm. Page* and *R. B. Bates,* for the defendant.