ELLIS BLISS *v.* CONN. & PAS. RIVERS RAILROAD COMPANY.

*Appeal. Lunacy. Inebriety.*

Whenever a man looses his memory and understanding, he is entitled to legal protection, whether such loss is occasioned by his own imprudence or misconduct, or by the act of providence.

PETITION for a writ of *certiorari.* It appeared that the petitioner for a long time was deprived of the proper exercise of his mental faculties, by continued intoxication. The case is fully stated in the opinion of the court, which was delivered at 'the Special Term, September, 1852, at Woodstock.

*R. McK. Ormsby* for petitioner.

*Underwood & Parker* for defendants.

The opinion of the court was delivered by

ISHAM, J. In this application for the writ of *certiorari,* the petitioner complains of a decision of the county court in dismissing an appeal from the award of commissioners in assessing damages for land taken by the corporation, in the construction of their railroad. The difference of between two and three hundred dollars in the second appraisal over that of the first, is quite satisfactory that the petitioner has reason to complain of injustice in the first appraisal; so that the case rests upon the question whether there was error in the proceedings.

The appeal was dismissed upon the ground that it was not taken within the time limited by the act. But it is insisted by this petitioner that he was, during that time, within the saving clause of the act *as being insane,* and that the appeal was taken in due season after that disability was removed. The 8th Sec. of the act of incorporation provides "that the owner of real estate, who "feels aggrieved by the decision of the commissioners, may within "ninety days from the making of such decision and notice thereof, "or from the removal of the disabilities in the preceding section "mentioned, appeal to the county court, &c." The disabilities there mentioned "are married women, infants, idiots or insane."

The county court, in passing upon this subject, found the facts true in relation to the condition and mind of the petitioner, as stated in the various depositions which are made part of the case, and when the court use the expression in the bill of exceptions " that they " did not consider him as positively insane," we are not to understand that, as a *fact* found in the case, but simply as the expression of an opinion that a mind thus affected and impaired, is not within the provisions of the act.

In dismissing the appeal, the court evidently proceeded upon the ground that no case would fall within that provision, short of settled frenzy or positive distraction and delusion of mind, and when that state was not produced by the party's own voluntary act or excess. That provision of the act should evidently be liberally construed, and should include all cases that are within its spirit, as well as its letter. Lunatics, and persons *non compos*, are not mentioned, and yet they would evidently come within its provisions. The term *insane*, by a distinct provision of our statute p. 68 Sec. 6 and p. 407 Sec. 11, includes " idiots, persons *non compos*, lunatics, and distracted persons," and this definition of the term by statute, is declaratory of the common law. In Co. Litt. 247, there is given a classification of the different cases of mental derangement, and in that, express mention is made of those who by inebriation and drunkenness, have deprived themselves of their memory and understanding. And whatever may have been the rule formerly, that such a person was not within legal protection,. unless as was afterwards held, that state was produced by practices of the other party, yet the law is now well settled otherwise, and so far as legal capacity is concerned, it is immaterial from what causes such a state of mind arises, whether by the act of providence, or the party's own imprudence. It is the state and condition of the mind itself, the law will notice, and not the causes that produced it. 1 Story's Eq. 247 § 225. 2 Kent's Com. 563.. 5 Mason's U. S. Rep. 28. 2 Aik. Rep. 167. 16 Vt. 335. And as the object of this provision of the act was to save the rights of those who have not legal capacity to protect them, those who are deprived of that capacity, from whatever cause it may arise, are included within its provisions.

It is not, however, every stage of inebriation that is attended with legal incapacity. It is not so, when the individual is under

XXIV.    28

a *mere temporary excitement,* unless it has been carried to that degree which may be called excessive, and the party is deprived of his reason and understanding. In such case, when under that excessive excitement, Justice STORY remarks, 1 Eq. Juris. § 231, " That no contract *or other act* can, or ought to be binding," *so too* if the party is not under that temporary excitement. Yet if by such repeated practices, his mind has become habitually diseased, his perceptive powers seriously affected, if he has become divested of his reason, and unconscious of his external relations, he has then assumed the character of one deranged, of a mind incapable of healthy action, and has lost that legal capacity that renders him responsible for his acts. Thus it is said in 3 Bac. Arb. 526 (a) " That though one mad by drunkenness is not " entitled to legal protection, yet if by one or more such practices, " an habitual or fixed frenzy be caused, though this madness was " contracted by the vice and will of the party, the habitual and " fixed frenzy thereby caused, puts the man in the same condition " as if the same was contracted at first involuntarily, and is the " same as any other frenzy, and equally excuseth him." The same is said by Lord COKE, Co. Litt. 247. Dean's Med. Juris. 585. Jac. Law Dict. 371. 3 Amer. Jurist 15.

With these principles in view, we are led to the examination of the question, whether this petitioner was in that state of mind that places him within the saving provisions of this act. No one can read the depositions of Doctor Carpenter and Poole, and the statement of Edward P. Bliss, and have any misgivings on the subject, for they are full, as to the extent of his inebriation and the effect it had produced on his mind. We learn as facts in the case, that for a long period, the petitioner was not only excessively intemperate, but to that extent as to render him unfit and incapable of transacting business that required thought or memory. That for most of the time during the period in question, he was out of his mind, so crazy as to require close attention to prevent his doing mischief, threatening to commit personal violence upon others, to burn his buildings, and was necessarily held in restraint by force, that he was rapidly verging towards delirium tremens, and incapable of deliberating upon those matters and weighing their consequences, with which his interests were intimately connected. And in relation to the subject matter of this appeal, we also learn

"that the members of his family often tried to talk with him about it, but could never communicate anything to him, or make him understand anything on the subject, until they were finally informed it was too late to do anything." Such was his state and condition *at the time the land was taken* by the commissioners, when it was *appraised and notice given*, and when the appeal was actually taken. For it was taken by his sons, when he was incapable of being consulted, but he was anxious to prosecute the same when afterwards he had in some measure recovered the proper exercise of his mind. It is difficult to conceive of a case, not merely of excessive inebriation, but of insanity and legal incapacity arising therefrom, if this is not one. If an action had been brought upon a bond or contract executed during this period, no court would hesitate to find a total want of that assent of mind necessary to make a binding contract. For such assent implies " a free and serious exercise of the reasoning faculty, and the power, both physical and moral, of deliberating upon the matter, and weighing its consequences." And Ch. Walworth says, 1 Paige Rep. 580, " That if a person for a considerable length of time be so intoxi-" cated as to deprive him of his ordinary reasoning powers, it is "*prima facie* evidence that he is incapable of managing his affairs." And Lord ELLENBOROUGH, in *Pitt* v. *Smith*, 3 Camp. Rep. 33, held that an agreement made under such circumstances was void, and said " That such person had not an agreeing mind," and which he adhered to in *Fenton* v. *Halloway*, 1 Stark. Rep. 126. This has also been so held at law, in this State, 2 Aik. Rep. 167, and in equity in the case of *Conant* v. *Jackson*, 16 Vt. 335 and 1 Story's Eq. Juris. Sec. 227, 8, 9. And a party will be relieved from any conveyance or contract made under such circumstances.

It would be exceedingly inconsistent to say, that the law under such circumstances, will protect an individual from liabilities arising *ex-contractu*, and yet will not protect him in his title and enjoyment of his real estate, or will suffer it to be taken from him by proceedings purely *in invitum* for a greatly inadequate consideration, by a neglect to take an appeal within a limited time, when during that time, he was unable to understand the nature of the proceedings instituted for that purpose, or the consequences of his neglect. The right of the corporation to take this land is given by the legislature in the exercise of their right of sovereignty, and they

are required by their charter, first to negotiate with the landholder, as to the amount of compensation, this failing, the property is to be appraised, subject to the right of appeal. In all these proceedings, there is required on the part of the landholder, the exercise of as sound and healthy a mind, and of reason as unimpaired, as is required in making any contract or disposition of his estate. And after the land has been taken by the corporation and appropriated to their own use, it can but be regarded as a violation of moral duty, to permit it to be taken from him for an inadequate consideration, or to deprive him, under such circumstances, of his right of appeal. We think, therefore, the appeal should not have been dismissed, and that the petitioner should have been permitted to prosecute the case under that provision of the act giving ninety days for appealing, after the disabilities therein mentioned are removed.

This renders unnecessary, the examination of the other questions presented, and on which we give no opinion. The result is that there is error, and that this writ must issue, and the judgment of the county court, in dismissing the appeal, must be reversed.