This is an action of ejectment. The lessors of the plaintiff claim the land in controversy as the heirs at law of Ann Donahoe, and the defendant claims title under her also. It is, therefore, unnecessary to decide the question as to the sufficiency of the certificate upon the grant to her. Both parties are estopped to deny title in her. The declarations of Ann Donahoe were properly admitted to prove the pedigree of the lessors of the plaintiff. In such questions it is often impossible to prove the relationship of past generations by living witnesses, and resort must be had to declarations, made by those now dead, who were likely to know the facts. Ann Donahoe, who is dead and under whom the defendant claims title, who was at the time a very old woman, declared that the lessors of the plaintiff were the children of her sister, who was married to one Whitaker, both of whom died many years ago, and that they were her nearest relations. The question is not as to the sufficiency, but as to the competence of the testimony. Ann Donahoe, as she states, was the sister of Whitaker's wife, contemporaneous with her, and the lessors of the plaintiff were the issue of that marriage. These are not mere wanton declarations — they were made to the lessors themselves, when pointing out the connection between them and the said Ann, and, in all probability, her heirs. Were these declarations of Mrs. Donahoe evidence proper to go to the jury of the fact of the marriage of Whitaker and her sister? We think they were. A marriage is proved either by showing an actual marriage or by proof of reputation or cohabitation of the parties. The usual evidence under the first in this State is by some person who was present at ceremony. Under the second, (190) declarations of deceased members of a family, 3 Starkie Ev. 4th part, 939; 1st vol., do, 58, 59. But the declarations here went further than mere reputation. Mrs. Donahoe speaks of what she declares she knew to be the fact, that the lessors of the plaintiff were the children of her sister, and born in wedlock. If so, the law presumes them to be legitimate until the contrary is shown. 2 Starkie Ev., 217, p. 4. Such a declaration is not only evidence of pedigree, but also of the state of the family, as regards the relationship of its different members. *Page 144 
1 Starkie Ev., 95. In this case it was not only as to the legitimacy of the lessors of the plaintiff, but also that they were her nearest living relations. The word relation is the same as kindred or consanguinity. Mrs. Whitaker was the sister of Mrs. Donahoe, who was the first purchaser of the land in question, and her collateral relations, and, upon her death without issue, was her heir or one of her heirs, and, upon the death of Mrs. Whitaker, her children stood in her place and succeeded to the inheritance of Mrs. Donahoe's estate, exclusive of those more distantly related. 2 Chitty Blk., 204. The declarations of Mrs. Donahoe showed that such was the fact, if believed, and entirely rebutted the idea that there was any person or persons who stood between them and the succession. It was, then, evidence to go to the jury of these facts, and his Honor committed no error in admitting it. However small the weight might be, its admissibility seems to rest on clear legal principles. We think his Honor erred in admitting the testimony of Mr. Erwin as to the declarations of the counsel of Mrs. Donahoe, made on the trial of the suit of Howard against her. The present defendant was the agent of Mrs. Donahoe in the management of that suit, and the declarations given in evidence were (191) those of the counsel, made in his argument to the jury. His Honor held that the plaintiff might give evidence of the acts and declarations of the defendant, and also the declarations of his counsel in his presence, as to matters of fact, which declarations the jury might weigh at their discretion. No fault can be found with the first part of his opinion. We cannot concur in the latter. In the first place, the counsel whose declarations were given in evidence was not the counsel of the defendant. To hold him bound by all the declarations made by the counsel of his principal in the argument of the case would be carrying his liability as agent farther than any principle of law we are acquainted with would justify. It would be carrying the doctrine very far to say that a party to a suit was bound by declarations of counsel made in his argument to the jury, though made in his presence.
His Honor committed no error in rejecting the deposition offered in evidence by the plaintiff. It being taken de bene esse, it did not come within the rule under which it was taken. He erred in rejecting the deposition offered by the defendant; this being taken under the general order, established by the court, the other requiring a special order, which had not been obtained. We do not agree with his Honor in his declarations to the jury upon the mental capacity of Ann Donahoe, as to the rule by which they were to ascertain the fact. He charged that *Page 145 
Ann Donahoe was deemed in law capable of making a contract until the contrary was proved. This is correct, so far as this case is concerned. He then proceeds, in judging of the sufficiency of her intellect, "it was not sufficient that she should be able, merely, to answer familiar questions, but to manage her business with judgment and discernment." We do not consider the rule so laid down to be correct. If all persons are to be judged incapable of making contracts who do not manage their business `with judgment and discernment," we apprehend there are many more disqualified by law than are now considered so. We know no better rule upon this subject (192) than that laid down by Lord Coke, that the person must be able to understand what he is about. To the same effect is the language of Chief Justice Taylor in Armstrong v. Short,8 N.C. 11. The rule laid down by his Honor was too broad, and well calculated to mislead the jury.