W. H. LAWRENCE *vs.* MALISSA STEEL *et al.*

1. There is no formula by which Judges are bound in charging upon the degree of mental capacity sufficient to make a will.

2. A charge that a testatrix must have had mind and intelligence sufficient at the time she executed the will to enable her to have a reasonable judgment of the kind and value of the property she proposed to will, and to whom she was willing is not erroneous especially in a case where there was evidence of un-undue influence as well as incapacity, nor was it rendered erroneous, though given in connection with a refusal to give a prayer embracing *in ipsisimis ver*bis, a definition of such capacity which had been approved by the Court.

3. It seldom does justice to the Judge or the case on trial, to select isolated expres sions which have been held to be proper in other cases, and insist upon their being used by the Judge in his charge, because it is seldom that two cases are exactly alike, and if they are and a charge in the first case has been approved by the appelate Court *non constat*, that it would not have been approved if expressed in other language.

4. If on the trial of an issue of *devisavit vel non*, the will is attacked on the ground of undue influence, and false representations whereby the testatrix as declared in the paper-writing propounded, was induced to believe that all of her relatives had joined in proceedings to declare her a lunatic, it is competent for the caveators to introduce the record of such proceedings to show that only a portion of the next of kin had instituted them.

The case of *Horne as. Horne*, 9 Ired. 99, cited and comemented on, and the case o *Wood vs. Sawyer*, Phil. Law 251, cited and approved.

This was an issue of *devisavit vel non* as to the validity of a script, propounded as the will of Prudence Cowan, and was tried at Fall Term 1871, of Catawba Superior Court, before His Honor Judge Mitchell and a jury.

The script was caveated on the ground of mental incapacity and undue influence, and false representations in connection therewith. In one clause of the script the testatrix declared "as a reason why I have thus disposed of my effects is this, that my relatives from whom I might have expected acts of

kindness and words of comfort in my old age, have undertaken to prosecute an inquisition of lunacy against me, and to deprive me of the control of my property, &c."

On the trial the caveators offered in evidence the record of the inquisition referred to by Mrs. Cowan, for the purpose of showing that only two and not all of her relatives had joined in the proceedings with a view to establish the false representations ~~ ged~~ by them to have been made to Mrs. Cowan. This evidence was received after objection.

There was evidence tending to show undue influence and mental incapacity, and rebutting testimony.

His Honor was requested by the propounder to charge the jury, "that if Prudence Cowan knew what she was doing at the time she executed the alleged will, and to whom she was giving her property, she had sufficient capacity to make a will." This instruction was declined by His Honor, who charged the jury amongst other matters not excepted to, "that the testatrix must have had mind and intelligence sufficient at the time she executed the will, to enable her to have a reasonable judgment of the kind and value of the property she proposed to will, and to whom she was willing it." The propounder excepted thereto. There was a verdict in favor of the caveators, and from the judgment therein rendered, the propounder appealed.

*Phillips & Merrimon and Armfield* for the appellant.

*Bynum* for the appellee, filed the following brief:

1. The petition of lunacy was competent for the purpose for which it was offered, to-wit: to show who are the parties to it, and that the suit was pending. The suit was referred to in the will, and falsely charged to be prosecuted by all the heirs and next of kin, and that in that suit, the propounder acted as the only friend of the testatrix. This evidence is offered under the defence of undue influence. If the Judge charges the law

substantially correct, the refusing correct instructions, it is not error.

Here his charge embodies in different language, the definition of competency laid down in *Horn* v. *Horn*, 9 *Ired.*, 99, *Moffat* v. *Witherspoon*, 10 *Ired.*, 185, and *Cornelius* v. *Cornelius*, 7 *Jones*, 593. See *Redfield on Wills*, 122, 3, 4, 6, 7, and notes. This author while adopting the definition which the Judge laid down in this case, at the same time refers to the definition in *Horn* v. *Horn*, as being the most concise definition of testamentary capacity and in substance the same. See note above. *1. Williams on Executors*, p. 16 and notes.

READE, J. It has been often said by this Court that a judge need not charge in the very words of the prayer for instructions even if the prayer be right, provided he do so substantially in other intelligible language. And it seldom does justice to the Judge or to the case on trial to select isolated expressions which have been held to be proper in other cases and insist upon their being used by the Judge in his charge, because it is seldom that two cases are exactly alike, and if they are and a charge in the first case has been approved by the appellate court *non constat* that it would not have been approved if expressed in other language. It is seldom, indeed. if ever, that any precise language can be established as a *formula* in such cases. That which probably comes as near to such *formula* as any other, is, that in criminal cases, the jury must be satisfied beyond a reasonable doubt. And yet it has been often held that any equivalent words will do.

In the case before us the plaintiff asked his Honor to charge that if the testatrix "knew what she was doing at the time she executed the alleged will, and to whom she she was giving her property she had sufficient mental capacity to make a will." His Honor declined to give the instructioned as prayed for, but charged the jury "that the testatrix must have had mind and intelligence sufficient at the

PAGE 585.

LAWRENCE *v.* STEEL.—Mr. Schenck (with whom was Bailey) argued this cause for the appellees, but by some inadvertence his name does not appear.

time she executed the will to enable her to have a reasonable judgment of the kind and value of the property she proposed to will and to whom she was willing it." And then His Honor proceeded in the same connection to charge in regard to undue influence which was not excepted to and not embraced in the plaintiff's prayer.

And now, the plaintiff insists that he was entitled to the specific charge prayed for, and he seeks to give point to his exception to the charge upon the ground that his prayer is in the very words of *Horne* v. *Horne,* 9 Ired., 99.

That in that case the Judge below charged in the words of his prayer and that this Court, on appeal affirmed it; and thereby established a *formula,* which His Honor ought to have used in this case. And that it was error if not contumacy to refuse.

It is true that the prayer of the plaintiff in this case is in the language of the charge in *Horne* v. *Horne,* and it is true that the Supreme Court said in that case "that the appellant had no right to complain at what was then laid down," but there was no criticism, favorable or otherwise, upon the language as being well or ill-selected and no intimation that it had been or ought to be a *formula.* And if the language of the prayer of *Horne* v. *Horne,* be criticised we would suppose that the Court *tolerated* rather than approved it. It is least liable to the objection of tautology for the latter part is embraced in the first. Why not stop at "if she knew what she was doing." Why add, "and to whom she was giving her property?" For that was a part of what she was doing. In further support of the language in *Horne* v. *Horne,* it is said that it has been quoted by a reputable text-writer as the best definition of testamentary capacity. It is true that Redfield does quote Horne's case with approbation, but he does not prescribe it as a *formula.* And here note the danger of the propounder of a good will insisting on Horne's case. It is true that no will ought to be established unless the testator has capacity to understand what

he is doing; but have not many wills been established where the testator had ample capacity to understand but who was laboring under some mistake of law or fact so that he did not know what he was doing? In the case of *Johnson's will*, Phil. Law R., which was established, the testator disinherited a relation, assigning as his reason for it in the will, that he was a gambler, when in truth he was not a gambler. The testator was mistaken and in that sense he did not understand what he was doing, yet, because he had capacity to understand, his mistake did not invalidate the will.

And so we were informed in the argument that the will in this case gives two parcels of land to two favorites of the testatrix of "homesteads," 25 acres each to be laid off on the west side of her land beginning at such a point and running to another point and so on ; and that each tract so laid off would be entirely worthless for a homestead, as it would be about a mile long, and only a few yards wide. Now it is impossible to resist the conviction that she did not know what she was doing. The draftsman of the will did not think, or else did not explain to her what would be the shape of the land. And if it had been explained she would doubtless have said : " Oh I did not think of that, I do not want it given in that shape." She evidently did not know what she was doing, and yet the propounder of the will was insisting upon *Horne's* case ! And just as strange the other side was resisting *Horne's* case, although it was decidedly in their favor. So that according to *Horne's* case it would seem that neither of the parties in the cause could make valid wills, because they did not know what they were doing, how large so ever their capacities to understand must be admitted to be. So that we think His Honor laid down the rule more favorably for the plaintiff than Horne's case, and with more general applicability to the whole case.

The substance of the charge was, not that the testator must have known but that she must have had capacity to under-

stand what she was doing. The language is, "must have had mind and intelligence sufficient, &c." mind and intelligence means capacity, and so the charge in substance was "must have capacity to enable her to have a reasonable judgment of the kind and value of the property, &c."

His Honor probably had another reason for selecting his own language instead of using that in Horne's case; there was an allegation and there was evidence of undue influence; and the prayer of the plaintiff did not embrace that view of the case, and it was the duty of His Honor to connect his charge upon capacity with that upon undue influence. And although we think the case warranted his putting it more strongly against the plaintiff than he did, yet the plaintiff can not complain of that.

The record of the application to have the testatrix declared a lunatic, on the part of her next of kin, was offered of evidence that only two and not all of her next of kin had instituted the proceedings, and that she had been imposed on in being made to believe that *all* of her relations had proceeded against her, and that under that erroneous impression she had disinherited them all, and given her property to strangers.

This was competent upon the point of undue influence. But it was a two edged sword, for while it tended to show undue influence, it also tended to show capacity, and the plaintiff doubtless availed himself of it at the trial.

There is no error.

Per Curiam.                                        Judgment affirmed.