## The James White Memorial Home *et al.*

*v.*

## Susannah Haeg *et al.*

*Opinion filed October 26, 1903.*

1. WILLS—*when proponents must show that will was executed during lucid interval.* If the evidence in a will contest shows that the testatrix was afflicted with insanity of a permanent nature before the execution of the will, the burden is upon the proponents to show that the will was executed during a lucid interval.

2. APPEALS AND ERRORS—*when overruling exceptions to allegations in bill will not reverse.* Allegations in a bill to contest a will that a conservator was appointed for the testatrix subsequent to the making of the will, and that her father and other relatives went insane, are unnecessary, but it is not reversible error to overrule exceptions thereto.

3. SAME—*when error in admitting evidence will not reverse.* Error in admitting evidence will not reverse where such evidence is merely cumulative, and where, under the whole evidence, the same result must have been reached had the objectionable evidence not been admitted.

4. TRIAL—*duty of court where objection is made to witness.* When an objection is made to the competency of a witness, it is the duty of the court, before his evidence is taken, to determine his competency by a *voir dire* examination, and, if necessary, by hearing additional evidence.

APPEAL from the Circuit Court of JoDaviess county; the Hon. RICHARD A. FARRAND, Judge, presiding.

JESSE ARTHUR, and F. J. CAMPBELL, for appellants.

THOMAS H. HODSON, and SHEEAN & SHEEAN, for appellees.

Mr. JUSTICE RICKS delivered the opinion of the court:

This suit was brought in the circuit court of JoDaviess county by David Price, Susannah Haeg and Hannah Barnes to set aside an instrument purporting to be the last will and testament of their sister, Lucy Price, on the ground of testamentary incapacity. The will dis-

posed of all her real and personal property, and was offered for probate on June 25, 1900, and on July 26, 1900, probate thereof was refused by the county court. On August 15, 1900, an appeal was taken from the order of said county court to the circuit court. On a hearing in the circuit court the will was admitted to probate, and on February 4, 1901, the will and order of probate were certified back to the county court. On April 26, 1901, the complainants herein filed a bill for partition in the said circuit court, praying that the court set aside the order allowing the will to be probated. A demurrer to the bill was overruled by the circuit court, and the defendants, standing on their demurrer, appealed to this court, (195 Ill. 279,) wherein the decree of the circuit court was reversed and the cause remanded. This suit was then brought to set aside the will, and this appeal is taken by the proponents from the decree of the circuit court setting aside the will and probate thereof.

The record discloses the following facts concerning Lucy Price: She was a maiden lady about sixty years old at the time she died. She lived on her farm, generally alone, but at times employing servants to assist in the work. Although she was possessed of peculiar and eccentric notions with reference to her attire, she was nevertheless unquestionably a woman of business judgment up to July, 1899. Several witnesses who saw her last in July swear that they noticed no change in her condition prior to that time. The first evidence of a breaking down of her mental powers was in May, 1899, when she wanted witness Carson to plant two or three bushels of corn on each eight acres of land, although one bushel was the usual amount. This was followed by various acts which were clearly the outgrowth of a diseased mental state. In the fall of 1899 her malady began to be serious, and the evidence shows conclusively that her vagaries from this time were not attributable to a mere eccentric disposition. It is unnecessary to rehearse the

various distressing manifestations of her mental disorder. It is sufficient to say that she was insane before January 25, which was the date of the will. Less than two weeks after signing the will she was adjudged insane and committed to the insane asylum, where she died June 7, 1900. The proponents contend that the will was executed during a lucid interval.

The errors insisted upon are as follows: That the circuit court erred in not sustaining all the exceptions to the bill; that the court erred in giving contestants' eighth instruction; that the court erred in refusing proponents' first refused instruction; that the court erred in permitting Sam Carson to testify or refusing to permit proponents to determine his interest before admitting his testimony; and that the verdict is contrary to the law and evidence.

Attention will first be given to the assignment that the verdict is contrary to the law and evidence. The proponents contend that the evidence shows conclusively that the will was drawn and executed while the testatrix had a lucid interval. The burden of showing that the will in this case was executed at a lucid interval was upon the proponents, and not the contestants. It is true that there is generally a presumption of sanity, but in this case such a presumption has been rebutted by evidence that the testatrix was afflicted with insanity of a permanent nature before the execution of the will. The presumption is that insanity continues unless the disorder is of such a character as to indicate that it is probably of a temporary duration. (*Emery* v. *Hoyt*, 46 Ill. 258; *Langdon* v. *People*, 133 id. 382.) There was no probability here of a discontinuance of the malady, and the burden was clearly upon the proponents to show that the will was executed at a lucid interval. They did not, in the judgment of the jury, do so. When the testatrix signed the will the two subscribing witnesses, S. B. Winters and George Laughrin, and no other, were present. They

swear that she was of unsound mind at the time she signed the will. Isaac Gillespie, who drafted the will several hours before it was signed, swears she was lucid and rational at that time; but he was not present when she signed. We see no reason for holding that the verdict was against the evidence. It is true that the testimony of the subscribing witnesses against the sanity of the testatrix should be viewed with caution, but there is no reason to believe that the jury did not view it in that manner. It is possible that they thought the testimony of Gillespie should be viewed with caution. At any rate, this court cannot reverse their finding on a presumption that they did not use caution in weighing the testimony of the subscribing witnesses. The burden was upon the proponents to show a lucid interval, and the verdict, which we have no disposition to disturb, shows that there was a failure to do this.

The first assignment is, that the court erred in not sustaining the proponents' exceptions to the bill. Portions of the bill which are objected to are allegations that subsequent to the making of the will a conservator was appointed for the testatrix; also allegations that the father and other ancestors and relatives of the testatrix were insane. These were perhaps unnecessary allegations, but it was not error, and certainly not reversible error, to overrule exceptions thereto.

It is further urged that the court erred in giving the following instruction for the contestants:

"You are instructed by the court that the material question for you to decide in this case is the mental condition of Lucy Price at the time she signed the will in controversy, and if you believe, from the evidence, that she was of unsound mind and memory and not of disposing mind when she signed said will, then you should find that the writing produced in evidence is not the will of Lucy Price, notwithstanding you might further believe, from the evidence, that on the night before she signed

426 JAMES WHITE MEMORIAL HOME v. HAEG. [204 Ill.

said will she was able to give the names of the legatees and what property she desired to bestow upon them."

It is urged that the vice of this instruction consists in singling out a portion of the evidence and telling the jury that they need not consider it. An analysis of this instruction in the light of the evidence will show that it was not error to have given it. The proponents introduced evidence showing that Isaac Gillespie, who drafted the will and was named therein as executor, went to the home of Lucy Price in the evening of January 25 with a blank form for the will. He swears that about two or three o'clock in the morning the will was drawn up, he writing at her dictation. George Laughrin, who was also there, swears that the will was drawn up before midnight. After it was drawn Laughrin took possession of it and early the next morning went over to get S. B. Winters to come and sign the will as a witness. He returned, bringing Winters with him. Gillespie had in the meantime left. The testatrix, as they swear, came out of a stupor and signed the will and then they signed as witnesses. The conflict in the testimony is due to the contradictory evidence as to her condition during this night. Gillespie, the draughtsman, swears that when the will was drawn she dictated it and was perfectly rational; that she knew the extent of her property and the objects of her bounty. The two subscribing witnesses swear that they believed that her mind was unsound when she signed the will, and that she inquired five or six times, directly after affixing her signature, whether the will was made. Now, with the evidence in this condition, it was not error to instruct the jury that if she were insane at the time she signed the instrument it would not be her will, even though she were rational and performed rational acts at a previous time, when the will was drawn. This instruction does merely that. It emphasizes the fact that however rational she may have been at the time the will was drawn, the will depends for

its validity upon her sanity at the time of the signing. Jurymen are apt to be confused by such expressions as "execution of the will." This instruction presents the case clearly to them, and is not objectionable.

Proponents offered the following instruction, which was refused by the court:

"The court instructs the jury that although a person who has mental capacity to transact ordinary business has mental capacity to make a valid will, yet a person may not have a sufficient mental capacity to transact ordinary business and yet have mental capacity to make a valid will; and although Lucy Price, by reason of sickness, disease or other cause, may not have had mental capacity to transact ordinary business, yet if she had the mental capacity to understand the business she was engaged in at the time she made the will in dispute, the jury should find that the said will was the will of Lucy Price."

This instruction, on its face, appears to be wholly unobjectionable, but in the light of the evidence it was not error to refuse it. In the first place, there was no testimony to the effect that when she signed the will she understood the business she was engaged in; and even if there were such evidence, this instruction might have been refused for the reason that it says, "if she had the mental capacity to understand the business she was engaged in at the time she *made* the will in dispute, the jury should find that the said will was the will of Lucy Price." Under the state of the evidence there was perhaps some reason for the jury to believe that when the will was drawn she was rational; but there is no evidence that she was rational when she signed. This instruction points to the time that the will was "made" as the time at which a sound mind is essential. More accuracy of statement is required under such condition of the evidence. Jurors might easily have taken the word "made" to mean "drawn," and have been seriously misled

thereby. Furthermore, even if it had been error to refuse this instruction, the error would have been corrected by giving the twelfth instruction, which was as follows:

"If the jury believe, from the evidence, that Lucy Price was afflicted by a diseased condition of the head, and by reason of such condition, or from other causes, was subject, at times, to mental weakness, paroxysms of delirium, incoherent mutterings and insane ravings, and that at such times she was not capable of transacting ordinary business, yet if you further believe, from the evidence, that she had a lucid interval when she executed the will in question in this case, and at the time knew the nature of the business she was doing and to whom she meant to give her property, then she had mental capacity sufficient to make said will."

Other instructions of like import and equally strong were given at request of appellants, and we are satisfied that so far as the appellants' case was shown by the evidence, the jury were fully and fairly instructed on every part of it.

Counsel for proponents urge that the court erred in the admission of the testimony of Sam Carson, a witness offered by appellees. The record discloses that he was the conservator of the testatrix after she was declared insane and up to the time of her death, and then, under the statute, was permitted to continue the administration of her estate pending the litigation touching her will. He was a legatee under the will and was made a party defendant. The contestants of the will, the appellees here, comprised all the legal heirs of the testatrix and all the devisees except the witness; George Laughrin, as to whom the provision is that he shall be rewarded for his services, without stating any sum; Adem Walter, Jr., who was given "a fiddle," and appellants. The witness, as has been stated, was called by appellees, and so far as his name appeared in the title of the case and the allegations of the bill and as a devisee un-

der the will, he was an adverse party, both in fact and in interest, to the parties calling him. When called he was objected to by appellants as incompetent. When the court inquired if he was a party, he was advised that he was. The court thereupon stated: "This man isn't testifying for himself; I think he is a competent witness." The reason or ground of the objection was not at that time stated, further than that he was the conservator and was testifying on his own motion.. After his testimony had been given he was inquired of by appellants as to the value of the horse, (the property willed to him,) and stated that it was $85. He was then inquired of as to the value of the estate, for the purpose, as stated by counsel, of showing that as administrator he would receive certain commissions, and that the commissions would amount to more than the value of the horse. This evidence the court excluded. Motion was then made to exclude all the testimony of the witness, and this motion was denied by the court.

The rule is, as contended by appellants, that when objection is made to a witness on the ground of his incompetency, it is the duty of the court, before his evidence is taken, to determine the question of his competency, and may do so by inquiring of the witness under his *voir dire.* He may also hear additional evidence to properly determine the question, and in that respect the court in this case erred. (*Campbell* v. *Campbell*, 130 Ill. 466.) It may be, too, (though we do not so determine,) that said witness was not a competent witness and that the refusal to strike his testimony was error. But it is not every error committed by a court that justifies the reversal of the case. Where, as in the case at bar, the evidence given by the witness is merely cumulative, and where, taking the whole evidence, the same result must have followed without the evidence objected to, we will not feel warranted in reversing the case that has been submitted to the jury merely for such error. In this case

there were not two witnesses who had any knowledge of the mental condition of the testatrix from early in December to the time of her death who did not testify that she was of unsound mind. Eleven days after the time she executed the will in question she was declared insane on an inquest and was sent to an asylum, where she died the following June. The main contention of the proponents, and the only contention they could make under the evidence given, was that the will was executed at a lucid interval. This witness did not testify anything about her condition on the two days, parts of which were consumed in the preparation and execution of the will. His testimony was general as to her mental condition before and after that time; and the same facts, substantially, and certainly sufficiently, were testified to by some ten or fifteen other witnesses. Under such a condition of the evidence we are not disposed to reverse this case for the error complained of.

The decree of the circuit court is affirmed.

*Decree affirmed.*