CAMERON v. POWER CO.

(Filed May 9, 1905.)

*Contracts—Effect of Intoxication—Test.*

1. A contract made by a person so destitute of reason as not to know the nature and consequences thereof, though his incompetence be produced by voluntary intoxication, is void and he may plead his own disability to defeat the alleged contract.

2. In order to invalidate a contract on the ground of intoxication the jury must find that at the time of signing, the person was so intoxicated that he could not undertsand the nature of the transaction and the effect of what he was doing. Mere imbecility of mind or inability to act wisely or discreetly is not sufficient to invalidate a contract.

ACTION by Cameron-Barkley Co. against Thornton Light & Power Co., heard by *Judge Walter H. Neal* and a jury, at the May Term, 1904, of the Superior Court of CATAWBA County. From a judgment for the defendant the plaintiff appealed.

*T. M. Hufham* for the plaintiff.
*E. B. Cline* and *S. J. Ervin* for the defendant.

WALKER, J. This action was brought to recover damages for the breach of a contract whereby the plaintiff agreed to sell and the defendant to buy a Corliss engine. The case was heard at a former term (137 N. C., 99) upon a petition for a *certiorari*. We ordered the writ to issue so that the plaintiff's exceptions and assignments of error could be more accurately stated. The judge who tried the case has made a very full and satisfactory return to the writ, and has given the plaintiff the benefit of every exception which could possibly be taken to the rulings of the court. The defect in the original case appears now to have occurred through no fault

of the judge, who was exceedingly liberal and accommodating towards counsel, agreeing for their convenience to appoint a place in the district to settle the case.

The defendant in its answer admitted that its president had signed a contract and pleaded specially that at the time of signing it, he was so drunk that he did not have sufficient mental capacity to contract with the plaintiff for the engine. The court, without objection, submitted only one issue to the jury, which is as follows: "What damage, if any, is the plaintiff entitled to recover of the defendant?" The jury answered "nothing." Judgment was entered accordingly.

The question presented for our consideration arises upon an exception to the charge of the court regarding the drunkenness of the plaintiff's agent and its sufficiency to avoid the contract. It is held by some authorities to be a principle of the common law that every contract, which a man *non compos mentis* makes, is avoidable, and yet shall not be avoided by himself because it is a maxim in law that no man of full age shall þe, in any plea to be pleaded by himself, received by the law to stultify himself and to set up his own disability in avoidance of his acts. *Beverly's Case,* 4 Rep., 123. And Coke, as appears in his Institutes, was of the same opinion: "As for a drunkard who is *voluntarius daemon,* he hath (as hath been said) no privilege thereby, but what hurt or ill soever he doth, his drunkenness doth aggravate it." Co. Litt., 247a. But Blackstone observes that this doctrine sprung from loose authorities and he evidently agrees with Fitzherbert, who rejects the maxim as being contrary to reason. 2 Blk., 291. Whatever was the true principle of the common law as anciently understood, there can be no doubt that since the reign of Edward III, if not since the time of Edward I, it has been settled according to the dictates of good sense and common justice that a contract made by a person, so destitute of reason as not to know the nature and

consequences of his contract though his incompetence be produced by intoxication, is void, and even though his condition was caused by his voluntary act and not procured through the circumvention of the other party. Mere imbecility of mind is not sufficient as a ground for avoiding the contract when there is not an essential privation of the reasoning faculties or an incapacity of understanding. 2 Kent 451. This court has adopted Coke's definition that a person has sufficient mental capacity to make a contract if he knows what he is about. *Moffit v. Witherspoon,* 32 N. C., 185; *Paine v. Roberts,* 82 N. C., 451. And it has been held not error to charge that the measure of capacity is the ability to understand the nature of the act in which he is engaged and its full extent and effect. *Cornelius v. Cornelius,* 52 N. C., 593. The doctrine that a party may plead his own disability to defeat the alleged contract arises out of the very nature of a contract, which requires that the minds of the parties should meet to a common intent, and if one of them has not "the agreeing mind" the contract cannot be formed. In *Hawkins v. Bone,* 4 F. & F., 311, *Chief Baron Pollock,* said: "But the law of England is that a man is not liable on a contract alleged to have been made by him in a state in which he was not really capable of contracting. A contract involves a mutual agreement of two minds, and if a man has no mind to agree, he cannot make a valid contract;" and the question at last is whether he was wholly incapable of any reflection or deliberate act, so that in fact he was unconscious of the nature of the particular transaction. It is not necessary that he should be able to act wisely or discreetly, nor to effect a good bargain, but he must at least know what he is doing. So far as the legal incapacity is concerned, it can make no difference from what cause it proceeded, whether from the party's own imprudence or misconduct, or otherwise. It is the state and condition of the mind itself that the law regards, and not the causes that pro-

duced it.    If from any cause his reason has been dethroned, his disability to contract is complete.    *Bliss v. Railroad,* 24 Vt., 424.    The Master of the Rolls (*Sir William Grant*) in *Cook v. Clayworth,* 18 Vesey, 15, said: "As to that extreme state of intoxication that deprives a man of his reason I apprehend that, even at law, it would invalidate a deed obtained from him while in that condition."    *Lord Ellenborough* in *Pitt v. Smith,* 3 Camp., 33, thus states the doctrine: "You have alleged that there was an agreement between the parties, and this allegation you must prove, as it is put in issue by the plea of not guilty; but there was no agreement between the parties if the defendant was intoxicated in the manner supposed when he signed this paper.    He had not an agreeing mind.    Intoxication is good evidence upon a plea of *non est factum* to a deed, of *non concessit* to a grant, and of *non assumpsit* to a promise."

The authorities sustaining the view of the law we have stated and adopted are quite numerous.    Clark on Contracts (2 Ed.), p. 186; Parsons on Cont. (9 Ed.), p. 444; *Matthews v. Baxter,* L. R. Exch., 132; *Webster v. Woodford,* 3 Day, 90; *Van Wyck v. Brasher,* 81 N. Y., 260; *Barsinger v. Bank,* 67 Wis., 75; *Bush v. Breinig,* 113 Pa. St., 310; *Bates v. Ball,* 72 Ill., 108; *Wright v. Fisher,* 65 Mich., 275; 14 Cyc., 1103; 17 A. & E. Enc., (2nd Ed.), 399.

It was held in *King v. Bryant,* 3 N. C., 394, that if a man was so drunk at the time of signing a bond that he did not know what he was doing, and while in that condition he was induced to sign the instrument, it was a fraud upon him which vitiated the bond, even in an action at law upon it, and to the same effect is the decision of the court in *Gore v. Gibson,* 13 M. & W. (Exch.), 623—opinion of *Parke, B.*    In the latter case, *Pollock, C. B.* said: "Although formerly it was considered that a man should be liable upon a contract made by him when in a state of intoxication, on the ground that he should not be allowed to stultify himself, the result

of the modern authorities is that no contract made by a person in that state, when he does not know the consequences of his act, is binding upon him. That doctrine appears to me to be in accordance with reason and justice."

We have examined the charge of the court with care and cannot find that His Honor said anything not in strict accordance with the law, as we now declare it to be. He charged the jury as follows: "The mere fact that the defendant's president was drinking was not sufficient, but the jury must find that he was so intoxicated that he could not understand the nature and scope of what he was doing. If the jury find from the greater weight of the testimony that the agent was drinking, it would not be sufficient to invalidate the contract, but if the jury find that the defendant's president, at the time he signed the contract or order for the engine, was so drunk as to be incapable of knowing the effect of what he was doing, then the contract or order would not be binding upon the defendant. Whether or not he was so intoxicated as to render him incompetent to contract, is a question for the jury upon all the evidence." We think this was a clear and sufficient exposition of the law applicable to the facts of the case. What the judge said in his reference to the nature of the transaction in which the agent was engaged and its importance or magnitude, was not calculated in our opinion to confuse the jury or lead them away from the real question involved in the issue, but was evidently intended to point what he had already said as to the true test of mental capacity, and to impress upon them, as an essential condition of the validity of the contract, that the agent of the defendant at the time he signed the paper must have been sober enough to understand the nature of the transaction and the effect or consequence of his act, and not that he must have been able to act with wisdom or discretion. The particular transaction, and what the party did in respect to it, may have furnished some evidence of his mental condition. The effect of that part of

the charge to which the plaintiff excepted was to leave the whole transaction, with the evidence as to the agent's intoxication, to the jury, and in doing so no reversible error was committed. His Honor told the jury that they must find that the agent was so intoxicated that he did not understand the nature and scope of the transaction, and that this was a question for the jury upon all of the evidence, a part of which necessarily was the transaction itself, whether in its nature large or small. ` Even if the illustration, as argued, was not a very apt one, it did no harm that we can discover.

No Error.