· In· re Will of MAGGIE A. ROSS.

(Filed 23 November, 1921.)

**1. Wills—Mental Capacity—Evidence—Time of Execution.**

The evidence of the mental capacity of a testator to make a will must, upon the trial, when at issue, be relevant to the time of its execution and attestation, and while, ordinarily a few days difference will not be regarded as vitally important, it is otherwise if his mental and physical condition and old age makes it material.

**2. Same—Appeal and Error—Reversible Error.**

Where there is evidence that the testatrix was sixty-eight years of age, in bad physical health, and subject to spells of weeping and melancholy despondency, and that she and her sister were in consultation with a lawyer for the purpose of his drafting her will, and it appears that she executed as her will the draft he had mailed to her, more than five days thereafter, an instruction to the jury that made the issue as to mental capacity rest alone upon the evidence thereof at the time of the consultation, is reversible error.

**3. Same—Acts and Conduct of Testator.**

Where the sufficient mental capacity of a testatrix to make a valid will is in question upon the trial, her acts and conduct may be competent only when they have a proper bearing upon her mental condition at the time of the execution of the paper-writing propounded as her will.

**4. Wills—Legal Execution—Burden of Proof—Instructions—Appeal and Error—Reversible Error.**

The burden of showing legal execution of the paper-writing purporting to be a valid will is upon the propounders, and an instruction that relieves them of this burden is error prejudicial to the caveators.

**5. Wills—Mental Capacity—Evidence—Aid and Suggestions—Instructions—Appeal and Error—Reversible Error.**

The sufficiency of the testator's mental capacity to make a valid will depends upon whether his mind at the time of its execution was sufficiently clear to know the character of his property, those whom he wished to benefit and to the extent thereof, and an instruction that goes further and makes this to depend upon aid or suggestions given by a relative for the drafting of the instrument caveated, constitutes reversible error to the prejudice of the caveator.

**6. Appeal and Error—Presumptions—Burden on Appellant.**

The appellant must affirmatively show the errors he complains of in the lower court against a presumption on appeal that the trial was free from prejudicial or reversible error.

**7. Appeal and Error—New Trials—Substantive Error—Technical Error.**

To entitle the appellant to a new trial for errors committed in the lower court, he must show that such errors were so substantially prejudicial to

him that a new trial may result to his benefit in the reversal of the verdict on the issue, and not merely technical or unsubstantial error.

WALKER, J., concurring in result.

APPEAL by caveators from *Ray, J.,* at March Term, 1921, of UNION.

Issue of *devisavit vel non* raised by a caveat to the will of Maggie A. Ross. Alleged mental incapacity, undue influence and want of due execution are the grounds upon which the caveat is based.

The jury returned the following verdict:

"Is the paper-writing propounded, and every part thereof, and the codicil attached thereto, the last will and testament of Maggie Ross, deceased? Answer: 'Yes.'"

From the judgment rendered the caveators appealed.

*Walter Clark, Jr., and Stack, Parker & Craig for caveators.*
*Cansler & Cansler, Vann & Milliken, Frank Arnfield, John C. Sikes, W. O. Lemmond, and W. B. Love for propounders.*

STACY, J. The trial of this cause in the Superior Court was a long-drawn-out and vigorous contest. It required fifteen days to try the case. Nearly one hundred witnesses were examined; the record is voluminous, and we would not be disposed to grant a new trial for any technical or formal error. In fact, it is now the settled rule of appellate courts that verdicts and judgments will not be set aside for harmless error, or for mere error and no more. To accomplish this result, it must be made to appear not only that the ruling complained of was erroneous, but that it was material and prejudicial, amounting to a denial of some substantial right. Our system of appeals, providing for a review of the trial court on questions of law, is founded upon sound public policy, and appellate courts will not encourage litigation by reversing judgments for slight error, or for stated objections, which could not have prejudiced the rights of appellant in any material way. *Burris v. Litaker,* 181 N. C., 376; *In re Edens' Will, ante,* 398, and cases there cited. Again, error will not be presumed; it must be affirmatively established. The appellant is required to show error, and he must make it appear plainly, as the presumption is against him. *In re Smith's Will,* 163 N. C., 464; *Lumber Co. v. Buhmann,* 160 N. C., 385; *Albertson v. Terry,* 108 N. C., 75. See, also, 1 Michie Digest, 695, and cases there cited under title, "Burden of Showing Error."

After carefully examining the record, with a full appreciation and observation of the above rules of procedure, we are unable to sustain the following portion of his Honor's charge, which was given at the request of the propounders, and to which the caveators have specifically excepted:

In re Ross.

"Though the jury should find from the evidence that Miss Maggie Ross was feeble-minded, and that alone and unassisted she could not have furnished her attorney, H. B. Adams, details concerning her property, nor the persons or institutions to whom she wished to will same, nor directions as to the disposition of said property, but should further find that Maggie Ross and Sallie Ross conferred together with their attorney concerning the execution of their wills; that Sallie Ross gave to said attorneys such details concerning the property of Maggie Ross and the persons or institutions to whom same was to be willed, and directions as to the dispositions of said property, Maggie Ross being present hearing such details and directions given, and by words or acts assenting to said details, directions and dispositions, and should further find that Maggie Ross's attorney, H. B. Adams, deceased, faithfully embodied the information, directions and details so given him concerning said property, persons and institutions to whom it should be willed and said disposition of said property, then the court charges you that said paper-writing would be the last will and testament of Maggie Ross, and that said paper-writing offered here for probate was formally executed by her according to the rules given you by the court."

There are several objections to this charge. In the first place, it fails to observe the difference in time between the giving of the instructions to the attorney and the execution of the will. It does not appear upon what date the Misses Ross conferred together with their attorney concerning the execution of their wills; but, in a letter written by said attorney on 15 November, 1907, he uses the following sentence: "It has required a little longer time to write your wills than I anticipated; however, I enclose them to you this evening by registered mail, so as to insure their safe delivery." The wills were executed five days later, on 20 November, 1907. It evidently required some time for their preparation, as the two are rather lengthy and bear evidence of careful drawing, with each containing more than forty separate items.

Ordinarily, the question of a few days might not be capitally important, but this would depend entirely upon the circumstances of the given case. It appears from the instant record that the testatrix was 68 years of age at the time of the execution of her will; she was feeble-minded, in ill health, given to fits of weeping or crying, and was subject to spells of melancholia. Mrs. Harriet Taylor, one of her neighbors, testified: "She would have these melancholy spells sometimes as often as three times a week; sometimes once a week; sometimes once every two or three weeks, and sometimes twice a week. She would sit for hours and not speak a word. . . . These spells would last a day or two sometimes. She would sit and twirl her thumbs, stroke her chin and stare out of the window into space. . . . Her memory was not very good. . . .

She could not carry·on a connected conversation." There was further evidence tending to show that the testatrix was crying at the time she signed the will. One of the subscribing witnesses gave the following testimony: "I do not remember anything that Miss Maggie Ross said while we were there outside of her kind of boohoo that I positively recollect. She never said anything about the papers, nor asked me to witness them to my recollection. At the time Miss Sallie said these are our wills, and we want you to witness them, Miss Maggie was in the room, but I can't be positive as to just what position, but I know we were all in there together. I can't say I know what she heard."

The competency of the testatrix to make the will in question is to be determined as of the date of its execution, or of its republication, as by a codicil (In re Journeay, 162 N. Y., 611), and not when instructions for its preparation were given. Memorial Home v. Haeg, 204 Ill., 422; Mitchell v. Corpening, 124 N. C., 472; 40 Cyc., 998; Kerr v. Lunsford, 31 W. Va., 659. Of course, the conduct of the testatrix at the time of this conference is competent and relevant, as bearing upon the question of her testamentary capacity; but, notwithstanding her mental condition at that time, this would not necessarily establish her competency to execute the will at the subsequent date. 28 R. C. L., 93. The above special instruction, however, takes no note of this difference in time, and really makes her capacity at the time of the conference, and not at the date of signing, the test of her ability to execute the will. This is not in keeping with the law as heretofore declared. Claffey v. Ledwith, 56 N. J. Eq., 333.

Again, the giving of this special prayer was erroneous because it takes from the jury the question as to the due execution of the will. This was one of the grounds of the caveat, and the burden was on the propounders to establish the formal execution of the paper-writing alleged to be the last will and testament of the said Maggie A. Ross. Mayo v. Jones, 78 N. C., 402.

But the overshadowing objection to this instruction is to the substance of the charge bearing upon the quantum of mind, or mental capacity, necessary to the making of a valid will. It will be observed that the basis of this prayer is not only that the testatrix could not alone and unassisted give her attorney details concerning her property, but that she could not inform him of the persons or institutions to whom she wished to will the same. The practical effect of this instruction was to say that although Maggie Ross was incapable of making a will, yet, if she assented to what her sister did, such conduct on her part would meet the requirements of the law and amount to a valid testamentary disposition of her property. We do not think she could understandingly and competently assent to her sister's act when, at the time, she was wanting in

In re Ross.

the requisite mental capacity to act for herself. We are not advertent to any authority holding that one person may make a will for another, when the person for whom the will is to be made is wanting in testamentary capacity. In fact, the very statement of the proposition would seem to refute itself.

If the word *assent,* appearing in its present context, is to be construed as giving such assent as the law requires, with sufficient capacity so to do, then the charge is self-contradictory, because the instruction starts with the assumption that the testatrix is without sufficient testamentary capacity. If she be without the necessary capacity of mind, then she could not legally assent to the act of another in disposing of her property by will. But in all events the instruction was prejudicial to the rights of caveators, and we must hold it for reversible error.

If a woman who is so feeble-minded that, alone and unassisted, she cannot furnish her attorney "details concerning her property, nor the persons or institutions to whom she wished to will same, nor directions as to the disposition of said property," then it can hardly be said that she is capable of making a will, disposing of a large estate, under the test as laid down in this and other jurisdictions. *Bond v. Mfg. Co.,* 140 N. C., 381; *Sprinkle v. Wellborn,* 140 N. C., 181; *Cameron v. Power Co.,* 138 N. C., 365; *Bost v. Bost,* 87 N. C., 477; *Slaughter v. Heath,* 27 L. R. A. (N. S.), 1, and note.

In *Barnhardt v. Smith,* 86 N. C., 473, *Smith, C. J.,* gives the following terse and plain statement of the law, which has been cited with approval in many subsequent decisions: "The rule laid down by *Lord Coke,* 'that the person must be able to understand what he is about,' approved in *Moffit v. Witherspoon,* 32 N. C., 185; *Horne v. Horne,* 31 N. C., 99, and more recently in *Paine v. Roberts,* 82 N. C., 451, as a general and practical rule for the guidance of juries, approximates as accurate statement of the law as to the degree of mental capacity required to make a valid disposition of property as the subject will admit." See, also, *Lawrence v. Steel,* 66 N. C., 584, and *In re Broach's Will,* 172 N. C., 520, and cases there cited.

Finally, in the recent case of *In re Craven's Will,* 169 N. C., 561, *Mr. Justice Walker,* speaking for a unanimous Court, clearly states the law, with citation of authorities, bearing upon the question of testamentary capacity, and the following quotations from the well-considered opinion delivered in that case, would seem to be decisive of the question now before us:

"It follows that one who is incapable at the moment of comprehending the nature and extent of his property, the disposition to be made of it by testament, and the persons who are or should be provided for, is not of a sound, disposing mind. And if this mental condition be really shown

31—182

to exist, the will must fail, even though he may have a glimmering knowledge that he is endeavoring to make a testamentary disposition of his property. It is here to be observed that some of the earlier cases have laid down the rule of testamentary capacity with much more subservience to and consideration for the purported expression of one's last wishes. They seem to have assumed that there must be a total want of understanding in order to render one intestable; that a court ought to refrain from measuring the capacity of a testator, if he have any at all; and that unless totally deprived of reason and *non compos mentis,* he is the lawful disposer of his own property, so that his will stands as a reason for his actions, harsh as may be its provisions. This ascribes altogether too great sanctity to the testamentary act of an individual as opposed to the law's own will set forth by the statutes and founded in common sense; and it is well that the best considered of our latest cases recede from so extreme and false a standard. Notwithstanding the modern rule to be favored, we should still, however, bear in mind that incapacity is more than weak capacity; and, as already intimated, mere feebleness of mind does not suffice to invalidate a will, if the testator acted freely and had sufficient mind to comprehend intelligently the nature and effect of the act he was performing, the estate he was undertaking to dispose of, and the relations he held to the various persons who might naturally expect to become the objects of his bounty.

"While it is true that it is not the duty of the Court to strain after probate, nor in any case to grant it where grave doubts remain unremoved and great difficulties oppose themselves to so doing, neither is it the duty of the court to lean against probate, and impeach the will merely because it is made in old age or upon the sick bed, after the mind has lost a portion of its former vigor and has become weakened by age or disease. Weakness of memory, vacillation of purpose, credulity, vagueness of thought, may all consist with adequate testamentary capacity, under favorable circumstances. And a comprehensive grasp of all the requisites of testamentary knowledge in one review appears unnecessary, provided the enfeebled *testator understands in detail all that he is about,* and chooses rationally between one disposition and another. Schouler on Wills, 2 Ed., 68 to 72, and notes. In the important case of *Delafield v. Parish,* 25 N. Y., 9, the Court, after announcing the fairer rule of testamentary capacity above set forth, spoke of the testator's mind as acting without external pressure wherever it acted properly. 'The testator must,' said the Court, 'have sufficient active memory to collect in his mind, without (insidious) prompting, the particulars or elements of the business to be transacted, and to hold them in his mind a sufficient length of time to perceive at least their obvious relations to each other, and be able to form some rational judgment in regard to them,' and we

may add, long enough to have been able to dictate or write out his wishes, and to execute the will with all due formalities."

There are other exceptions appearing on the record, worthy of consideration; but, as they are not likely to arise again, we deem it unnecessary to consider them now.

New trial.

WALKER, J., concurring in the result: We have a well established rule in appellate courts that in reviewing a charge of the court we should read it as one connected whole, and not distributively, allowing one part to correct any seeming error in another part of it, provided the two are not in deadly conflict. If we follow this rule, not more clearly stated than in *S. v. Exum,* 138 N. C., 599, where human life was the issue, and examine the extract from the charge in this case in the light of other portions of it, we will find most assuredly that the law as to the mental capacity required to make a will was fully and accurately stated by the learned presiding judge, and the jury were especially instructed to consider the other parts of the charge to which we have referred in connection with what was to follow, and told that if, within the definition and explanation given to them by the court, the testator did not have sufficient mental capacity at the time she executed the script they should find against its validity. It is my opinion that there was no error in the selected instruction when properly construed, but surely there was none if we read it in connection with those that preceded it. But even if there was any error in the instruction of the presiding judge selected by the Court as the ground for a new trial, there was a codicil to the will which, in law, amounted to a republication of it (*Watson v. Hinson,* 162 N. C., 72; *Gulland v. Gulland,* 94 S. E., 943; *Lawrence v. Burnett,* 96 S. E., 416), and there was no such objection to the charge as to the execution and validity of the codicil. For all that appears, she executed the same without any help or suggestion from others, and this cured any error in regard to the will, if there was any.

But I think there was an error otherwise in the charge, which was prejudicial to the caveators, that is, if we are to follow a decision of this Court of recent date, on competency of evidence as to mental capacity, and especially with reference to declarations and conduct of the testator. While I question the correctness of that decision, and of others which may have followed it, it has the weight of authority and precedent until it is reversed or modified, and should have been heeded by the court below.

Therefore, I concur in the result, but dissent from the opinion so long as the new trial is based upon the error alleged in it.