CAROLINE S. TERRY, EXECUTRIX v. LINDA D. McCLINTOCK AND W. H. STEPHENS.

*Bill by assignee of a decree to enforce it—Admission of farther defense—Modification of original decree.*

Where a complainant has voluntarily assigned a regular decree in his favor, the assignee must resort to the court to obtain the benefit of it.

Where the assignee of a regular decree granted to a complainant files a bill for its enforcement, he thereby recognizes it and cannot be heard to impeach it, though he may have a mistake in it corrected or an omission supplied if necessary to carry out its principle.   But the defendant. is not precluded from asking that the hearing of the bill shall be conditioned on an examination into the justice of the original decree against him.   The court will not usually change the decree or refuse to enforce it.

An infant gave a mortgage which was foreclosed some time after she became of age, and though personally served, she allowed the bill to be taken as confessed, apparently without any disposition to contest it. *Held* that she had no equity entitling her to set up the defense of infancy to defeat a subsequent bill brought by an assignee of the foreclosure decree to enforce it against her.

Appeal from Saginaw. Submitted July 1. Decided October 8.

BILL TO REVIVE suit and enforce decree for the benefit of an assignee of notes, mortgage and decree. Defendant McClintock appeals.

*Benton Hanchett* for complainant. The assignee of a decree in favor of complainant succeeds to complainant's rights in it, *Hampson v. Sumner*, 18 Ohio, 454; Story's Eq. Pl., §§ 429–432; 2 Barb. Ch. Pr., 86, 87; an infant can ratify his mortgage after becoming of age, by any acts or conduct showing an intention to confirm or a recognition of its validity, *Prout v. Wiley*, 28 Mich., 167; *Merch. Ins. Co. v. Grant*, 2 Edw. Ch., 544; *Lawson v. Lovejoy*, 8 Greenl., 405; *Henry v. Root*, 33 N. Y., 543–9; *Delano v. Blake*, 11 Wend., 86; *Jones v. Phœnix Bank*, 8 N. Y., 234; *Kline v. Beebe*, 6 Conn., 494; *Whitney v. Dutch*, 14 Mass., 460; *Orvis v. Kimball*, 3 N. H., 314; *Boyden v. Boyden*, 9 Met., 519; *Pursley v. Hays*, 17 Ia., 310; *Lynde v. Budd*, 2 Paige, 191; *Cork &c. R. R. v. Cazenove*, 59 E. C. L., 934; *Callis v. Day*, 38 Wis., 643; *Cheshire v. Barrett*, 4 McCord, 241; *Bobo v. Hansell*, 2 Bailey (S. C.), 114; *Keegan v. Cox*, 116 Mass., 289; 2 Kent's Com., 239; Schouler Dom. Rel., 533; 577–9; 584 –6; 1 Jones Mortgages, § 105.

*Harlan P. Smith* and *John J. Wheeler* for defendant McClintock. When a complainant transfers his interest, his suit ends and the transferee can come into court only by original bill, *Barnett v. Powers*, 40 Mich., 319; in this case proceedings should have been taken by an

original bill in the nature of a bill of supplement and revivor, *Webster v. Hitchcock*, 11 Mich., 56; *Widner v. Olmstead*, 14 Mich., 124; *Perkins v. Perkins*, 16 Mich., 166; *Brewer v. Dodge*, 28 Mich., 359; 2 Dan. Ch. Pr., [3d Am. ed.] 1598; 2 Barb. Ch. Pr., 81; Story's Eq., 349; Mitf. Pl., 64; whereby a new defense could be made, *Atty. Gen. v. Foster*, 2 Hare, 81; a bill to carry a decree into effect is, in a case like this, an original bill in the nature of a bill of supplement and review, and is governed by the same rules, and the decree may be controverted, 2 Barb. Ch. Pr., 87, 88; 2 Dan. Ch. Pr., 1614, n. 7; 1615, n. 1; *Hamilton v. Houghton*, 2 Bligh P. C., 169; *O'Connell v. McNamara*, 3 Dr. & Warren, 411; a decree *pro confesso* may be opened, *Millspaugh v. McBride*, 7 Paige, 509; *Tripp v. Vincent*, 8 Paige, 176; *Curtis v. Ballagh*, 4 Edw. Ch., 635; and relief given against it in the courts' discretion, *Wooster v. Woodhull*, 1 John. Ch., 539; *Parker v. Grant*, id., 630; filing an amended bill opens such a decree, *Bank of Utica v. Finch*, 1 Barb. Ch., 75. Delay only will not operate as an affirmance, *Prout v. Wiley*, 28 Mich., 164; *Rawley v. Rawley*, 17 Eng., 130; *Walsh v. Powers*, 43 N. Y., 23; *Carrell v. Potter*, 23 Mich., 377; an infant's mortgage is of no binding force until after the infant comes of age, *Minock v. Shortridge*, 21 Mich., 315; a direct and deliberate promise made upon reaching majority, and with the knowledge that there is no legal liability, is necessary to establish an infants' contract, *Smith v. Mayo*, 9 Mass., 62; *Ford v. Phillips*, 1 Pick., 202; Tyler Infancy, 86; Story Cont., § 69; *Goodsell v. Myers*, 3 Wend., 479; *Rogers v. Hurd*, 4 Day, 57; *Wilcox v. Roath*, 12 Conn., 550; *Bigelow v. Grannis*, 2 Hill., 120; *Watkins v. Stevens*, 4 Barb., 175; *Tucker v. Moreland*, 10 Pet., 73; *Hodges v. Hunt*, 22 Barb., 151; *Wheaton v. East*, 5 Yerg., 41; 2 Kent's Com., 238 n. *a*; mere acquiescence for 11 years was held not to amount to a confirmation of a conveyance, *Jackson v. Carpenter*, 11 Johns., 539; a mortgage is an executory

contract, and must be confirmed to be binding, *Corey v. Burton*, 32 Mich., 32.

GRAVES, J. The female defendant, who is the wife of Elias J. Clintock, subsequent to her marriage but during her minority, received a deed from her uncle, Mr. Dutton, of the east half of lots five and six in block sixty-one of Hoyt's plat in the city of East Saginaw, and she and her husband went into possession and have since continued to hold and enjoy it. The conveyance to her was made subject to a mortgage however of $2,000 in favor of one Derby, and this burden not only diminished the value of her right in the premises to that amount but was liable to be used to defeat her estate altogether and terminate her privilege of enjoyment.

May 2d, 1874, and eleven months before the expiration of her minority, she borrowed of John Q. Adams the sum of $2,000 with which to pay and discharge the Derby mortgage, and the loan was so applied. The premises were relieved from that mortgage; at the same time, however, she undertook to secure Mr. Adams for his loan and accordingly executed to him her own mortgage for the amount on the same premises.

October 11th, 1876, and nearly a year and a half after her attainment of majority, which occurred April 19th, 1875, Mr. Adams filed his bill in the court below to foreclose this mortgage. It is needless to refer to the defendant Stephens, who was brought in as claimant of some subsequent interest and has interposed no defense.

November 8th subpœna to answer was served personally on Mrs. McClintock, and on the 21st of April, 1877, the bill was taken as confessed by her for want of answer, she having previously appeared as the record shows by her present solicitor.

May 28th, 1877, the commissioner's report dated ten days earlier was filed showing the amount due, and on the same day the court made the usual foreclosure decree.

June 22d, 1877, Adams assigned the decree and mortgage to James G. Terry, and on the 7th of the succeeding July he filed the present bill to revive the case and enforce the decree.

November 19th, 1877, Mrs. McClintock put in her answer to the last bill, to which complainant filed a general replication November 24. A month later Mr. Terry died leaving a will of which he appointed the present complainant executrix, and on the 18th of March, 1878, the court revived the case and allowed it to be conducted in the name of the executrix as complainant. Proofs were then taken, and on the 6th of January, 1879, the court decreed in complainant's favor and Mrs. McClintock appealed.

Two principal questions are raised:

*First.* What defensive right is given to Mrs. McClintock by the exhibition of the last bill?

*Second.* Applying the correct rule governing such proceedings, ought the case to be deemed sufficient to justify the superseding of the first decree and the admission and allowance of the defense offered against the cause of action.

As to the first question, it is contended on the part of Mrs. McClintock that the second bill, in virtue of its own force, opened the whole original cause, notwithstanding the decree; and as matter of right entitled her to bring forward and assert any defense which she might have made, but refrained from making to the first bill, and that the original decree is as nothing except as the court may feel persuaded by it to decide again in the same way. The subject presented is of sufficient consequence to merit special attention. And it is needful in the first place as a guard against misconstruction to distinguish cases of this class from others which are not subject to exactly the same considerations.

The case is not one where the complainant after an order *pro confesso* but prior to decree has voluntarily

amended his bill in matter of substance, and has thereby introduced a different case from that which has been admitted by the silence and default of the defendant, and as a consequence has renounced the basis of the order. Neither is it a case of revivor and supplement before decree; nor a case of rehearing in which the cause is already open to the complaining party as to those parts of the decree objected to; nor a bill of review or a bill to impeach a decree where the direct purpose is to convict the original decree of fault or blame; nor a cause where the change of title or interest has been caused by an act of law.

It is the simple case where in consequence of complainant's voluntary assignment of his regular decree of foreclosure, it became necessary for the assignee to have recourse to the court to obtain the benefit of its former judgment. *Webster v. Hitchcock,* 11 Mich., 56; *Perkins v. Perkins,* 16 Mich., 162.

The complainant in coming before the court and alleging his acquisition of the decree and praying the benefit of it, does not proceed in hostility to the decree but strictly in obedience to its principle. He informs the court of his ownership and asks it to execute its judgment, and his bill is in affirmance of that judgment, and he can not be heard to impeach it. There is nothing inconsistent with the permanence of the decree in this action of complainant. On the contrary what is thus done by him recognizes the decree as a subsisting judgment which the court will maintain and enforce. The explanation in the work of Mr. Mitford, afterwards Lord Redesdale, is the basis of all that is found in Story, Daniell, Barbour and other books, and authors have generally done little more than copy his language. He observes that "the court in these cases in general only enforces, and does not vary, the decree; but on circumstances it has sometimes considered the directions, and varied them in case of a mistake; and it has even on circumstances refused to enforce the decree;

41 MICH.—63.

though in other cases the court, and the House of Lords, upon an appeal, seem to have considered that the law of the decree ought not to be examined on a bill to carry it into execution." pp. 95, 96. Further on he mentions the case of a Welsh decree which the defendant sought to evade by flying to England and where the Lord Chancellor thought himself at liberty to examine the justice of the decree. Lord Kenyon alluding to this case in *Galbraith v. Neville*, strongly questioned the chancellor's opinion, but on a different ground. *Walker v. Witter*, 1 Doug. 1, 6, note 2.

The cases have not been harmonious as is very evident from what is said in Mitford and from the guarded manner in which elementary writers have generally spoken. Some of the decisions may be noticed.

In *Johnson v. Northey*, 2 Ver., 407, the Lord Keeper after referring to the fact that the complainant had not only examined witnesses to the same matters which were at issue in the former cause, but had also examined the same witnesses, proceeded to observe that the depositions were irregular and ought to be suppressed : "for although the creditor's bill was to have the benefit of the former decree, so that the court might examine the justice of that decree; yet that must be done upon the proofs in that cause, wherein the decree was made, and not upon any new proofs." It will be noticed in passing that were this rule to be applied to the case of Mrs. McClintock, it would be conclusive against her, because without a new showing she would be no better off than she was when Adams held the decree against her.

*Minshull v. Lord Mohun* was an original bill in the nature of a bill of revivor against a devisee, and the question was whether the defendant should be at liberty to enter into the merits of the cause and question the justice of the decree, and the court ruled he should not; because as was said, an heir could not, and a devisee ought to be no better off. 2 Vernon, 672.

In *Attorney General v. Day*, Lord Hardwicke refused

to carry into execution an order which had been entered by consent of the parties without the attention of the court having been directed to it, upon the report of a master for the purchase of land for a charity. 1 Ves. Sr., 218. There were strong public as well as private considerations, and a private act of parliament was recommended.

In *West v. Skip*, heard only a few months later by the same chancellor, he said: "The only difficulty objected is, that on a bill to carry a former decree into execution, the court can only do that, and not vary; and the general rule is so. But there are several instances wherein the court has considered the directions, and whether there was any mistake: as has been done by Lord Cowper, to attain the justice of the case; and may be done here, especially as between new parties." 1 Ves. Sr., 239, 245.

*Robinson v. Robinson* was a bill to revive a former decree and have the benefit of it. The case was heard a little earlier than *Attorney General v. Day*, and was also decided by Lord Hardwicke. He observed that the decree could not be controverted; that there had been cases of bills in nature of revivor to carry on a former decree, where the court sometimes, though but seldom, have said the defendant may dispute that decree, but never that the plaintiff might. The decree has determined the question, whether it was then debated or not; and the court was thereby bound, though the plaintiff being an infant, was not. 2 Ves. Sr., 225, 232.

In *Devaynes v. Morris*, 1 Myl. & C., 213, where a defendant in a mixed and complicated litigation filed a bill to be enabled to carry on the inquiries directed by a decree, and the original complainant endeavored by his answer to go into the merits of the original cause, and on grounds which existed when the decree was given, contest the right of the party so filing the second bill to have the benefit of the decree, Lord Cottenham said the party was entitled to put the case in the proper state to carry on the decree without any reference to its merits or to the facts, and

that all the statements in the answer as to such facts, proceedings and merits were irrelevant; that if the proper time for making the defense had been permitted to pass, the omission could not be supplied in such manner; and if new matter had arisen varying the situation of the parties, other means existed for bringing it forward; but that the right of a party to prosecute the decree, and therefore to do what is necessary for that purpose, cannot depend upon the merits of the decree.

In the later case of *Hodson v. Ball* before Lord Lyndhurst, where under cover of a supplemental bill there was an effort to alter the frame of the original decree, the Lord Chancellor referred with approval to what is said in Mitford and observed that a supplemental bill in aid of a decree in order that it may be carried out, cannot vary the principle of the decree. Its province is to carry out the principle of the decree; to give full and complete effect to the decree as it exists; and further on he adds that such a bill takes the principle of the decree as the basis and seeks merely to supply any omission which there may be in the decree or in the proceedings so as to enable the court to give full effect to its decision. *The American Life Insurance and Trust Co. v. Sackett,* before Chancellor Walworth in 1846, is a case worthy of notice in this connection. The company filed their bill against Bayards to foreclose a mortgage and they set up usury. The proofs were duly taken and closed and the case put in readiness for hearing. Two years thereafter the Bayards were decreed bankrupts and Sackett was appointed assignee. Some time later the company filed their supplemental bill against Sackett to revive and continue the suit, and other persons who had acquired some of complainant's interest were joined as defendants. Sackett subsequently moved for an order to examine the Bayards as witnesses on his behalf and for further time, and on the hearing of this application the Chancellor, after remarking that Sackett was simply the successor of the Bayards and

representative of whatever right or interest they had prior to the bankruptcy in the litigation, and that his position was equivalent to that of heir at law or devisee in case of abatement by death of a defendant, proceeded to say that in such cases the only matter proper to be put in issue upon the supplemental bill, unless a new matter of defense has arisen since the joining of the issue in the original cause, is the supplemental matter which is stated in the new bill, to show the transmission of interest from the original party to the new party who is brought before the court by the supplemental bill; that the effect is to revive as against the new defendant and place the case in the same condition it was in when the circumstance causing the defect occurred; that when the original bill has been previously answered, the new defendant adopts such answer to the original bill as his answer thereto : if it has been taken as confessed, the order *pro confesso* stands as against him, unless he obtains leave of the court to have it opened; and if the proofs have been closed, they remain closed as against him, and *Bagnall v. Bagnall*, 12 Vin. Ab., 114, is referred to as deciding that in case of a supplemental bill filed after publication in the original cause it is not regular to examine witnesses to a matter that was in issue and not proved in the original cause.     1 Barb. Ch., 585. Among other cases not noticed see *Hamilton v. Houghton*, 2 Bligh App. Cas., 169; *O'Hara v. Shepherd*, 3 Md. Ch. Dec., 306; *O'Connell v. M'Namara*, 3 Dr. & War., 411; *Grew v. Breed*, 12 Met., 363; *Linton v. Potts*, 5 Blackf., 396; *Tallman v. Varick*, 5 Barb., 277; also 2 Dan. Ch. Pr., 1585, 1586; 2 Barb. Ch. Pr., 86 et seq.; Story Eq. Pl., § 429; Adams' Eq., 415, 416.

Much of the disagreement noticeable in the opinions has been due to the use of general expressions by the judges in cases where the circumstances were particular, and some part no doubt to the real uncertainty existing concerning the practice during its development.     But notwithstanding the real as well as seeming discordance,

the rules which now obtain in such a case as the one before us seem to be settled.

The bill is considered as in affirmance and further-ance of the principle of the dêcree, and the decree is neither undone nor displaced by it, and generally the court will do nothing more than carry it out. The complainant in such a bill cannot impeach the decree, because that would be in direct contradiction of the theory of his proceeding. But he may sometimes have an omission or mistake corrected where that is necessary to maintain and effectuate the principle of the decree. The defendant, however, is not so restricted. His atti-tude in connection with the proceeding is not that of one urging the correctness of the principle of the decree, and his position does not hinder him from making it a question whether the court will enforce its judgment upon him. He has an abstract right to go back and controvert the decree; but he may ask that the enter-tainment of the application shall be subject to the con-dition that the justice of the decree as against him shall be considered.

In fine it seems to have become settled that the court acting on the maxim that he who asks equity ought to do it, will meet the call made by the complainant on its justice to execute its previous decree by an application of its equitable discretion to the circumstances to see whether the decree is one which it would be just to enforce; and if not, then to change it to meet the requirements of equity or refuse assistance altogether. But the court will not change the decree or withhold assistance under such a bill except in very unusual cases. Adams Eq., *supra*; Lord Mansfield as reported by Buller J. in *Galbraith v. Neville,* supra.

According to the view thus reached, the decree against Mrs. McClintock is not opened or set aside, and the only question is whether on this application to enforce it, it becomes the duty of the court in consideration of the facts and the principles of equity to open it and let

in her defense of infancy which she might have set up in the case for foreclosure but did not, and this brings us to the second and final consideration. We have seen that she was nearly a year and a half over majority when the original bill was filed and that the subpœna to answer was duly served upon her and her appearance entered by her present solicitor.

In her answer to the present bill she undertakes to explain how it happened that she did not attempt in the first case to escape liability for the money which had been lent to her in good faith, and which had been actually applied to remove an encumbrance resting on her estate, and was an existing addition of so much to her fortune. She says in the answer that she authorized her husband to employ counsel and defend the suit, "and left it entirely to her husband, and paid no further attention to it;" that as she is informed the reason her solicitor made no defense was that he understood she had paid interest after coming to majority; that in fact, however, she never paid interest or in any way recognized or ratified the mortgage after her arrival at the age of twenty-one. Neither on the stand nor in her answer does she offer to inform the court who misled her solicitor or why it was that he was allowed to be misled, and he is not called to explain anything.

Moreover in her character of witness she is silent respecting the alleged misunderstanding or misapprehension of her solicitor, and the fact is not proved by others. Her husband, to whose judgment and discretion she confided her interests, and who is her chief witness, suggests nothing on the subject. On the contrary he swears that the reason the foreclosure went undefended was that he expected to get help and be able to pay the loan. His further statement as to having been told by the solicitor after foreclosure that his wife had no defense is of no importance.

The institution of the suit against her was a call

upon her by the law to declare her objection to the claim if she had any, and to disclose her intention to avoid the mortgage if that was the case.

We have seen, however, that she neither offered resistance nor suggested objections nor even instructed or consulted her solicitor, whilst her husband, to whose prudence and sense of justice she seems to have trusted everything, proceeded upon the conviction that no defense should be made, because it was his expectation and design that the debt should be paid and not repudiated. But beyond this, the solicitor who has continued to act for her during the whole litigation, and from whom she does not appear inclined to withdraw confidence, voluntarily extended professional courtesy and consented to facilitate the foreclosure proceedings and smooth the way to an uncontested judgment.

The act was commendable; but it remains a circumstance with others to characterize the original proceedings and favor the opinion that Mrs. McClintock's attitude was amicable and acquiescent, if not consenting. He stipulated that the complainant might proceed to take proofs and perfect decree and sale without service of notice of any proceedings. There was no rigorous practice, —no concealment,—no surprise. After this explanation we are unable to perceive any satisfactory ground for the claim preferred to the court to go behind the original decree and ignore or erase it for the purpose of allowing Mrs. McClintock at this day to recover opportunity to contend that she was not able, when she got the money, to bind herself to repay it.

Everything appears to have been fair and honest, and in harmony with her interest. There is no sign of oppression, of imposition or mistake, and the claim urged in her behalf is that the regular decree against her shall be obliterated in order that she may take advantage of the fact that she was not quite of age when she borrowed the money, and secured an enlargement of her own fortune at the expense of those who,

in reliance on her good faith, confided in her promise. There was a clear moral obligation, even if we admit that, according to the strict rule applicable to minors' contracts, the circumstances were not such as to warrant Mrs. McClintock's coercion by judicial proceedings in case of objection. In the language of Mr. Justice Ashhurst, in *Cockshott v. Bennett*, 2 T. R., 763, 766, she was "bound in equity and in conscience to discharge the debt, though the law would not compel (her) to do so." And finally, we observe as did the Supreme Court of Ohio, in *Hampson's Adm'r v. Sumner et al.*, 18 Ohio, 444, 455, that "we are not prepared to say that there was anything inequitable in the decree, and feel no disposition to change it."

The decree of the circuit court should be affirmed, with costs against the appellant.

The other Justices concurred.