WILLARD, EXECUTRIX, *v.* STAUFFER ET AL.

[No. 13,555.   Filed February 28, 1930.]

120

*Orrin H. Markel* and *Hughes & Arnold,* for appellant.
*Oscar Jay,* for appellees.

McMAHAN, J.—This action was commenced by Stanford Willard, now deceased, against John P. Stauffer, Melvin Loucks, Benjamin Lechlitner, Exchange Bank of Wakarusa, Walter Lumber Company, Herbert W. and Harry A. Layer and others, seeking to enforce an alleged lien upon certain real estate. The complaint alleges that, on May 2, 1924, the plaintiff, Stanford Willard, was the owner of certain real estate in Elkhart County; that, on said day, a decree was rendered in the Elkhart Superior Court setting aside a deed theretofore executed by John P. Stauffer conveying the real estate to the plaintiff as to certain claims and judgments then held by Loucks, the Exchange Bank, Lechlitner, the lumber company and Layer and Layer; that plaintiff also recovered a judgment in said cause against Stauffer and the other named defendants for $13,380, which was declared a first lien on said land and which was due and unpaid; that the liens and judgments of the said defendants against Stauffer were subordinate and subject to the lien of the plaintiff; that, during the time plaintiff held the title to said real estate, he paid various sums for and on account of taxes and insurance; that the defendants claim to hold some interest in and judgment liens on said real estate which are alleged to be junior to the lien of the plaintiff. Plaintiff demanded judgment for

$18,000, that his judgment and lien be adjudged superior to the liens and claims of the defendants, and that the real estate be sold for the payment of plaintiff's judgment and lien.

The facts were found specially, and, in substance, are as follows: On November 16, 1921, the above-named defendants other than Stauffer commenced an action in the Elkhart Superior Court against John P. Stauffer, Virgil Stauffer, Clarence L. Stauffer and Stanford Willard and Anna Willard. The complaint, as amended, alleged that, prior to April 22, 1921, John P. Stauffer was indebted to Loucks on a certain promissory note and to each of the other plaintiffs on judgments theretofore recovered by them against John P. Stauffer in the Elkhart Superior Court for the amounts so owing each of them, which said judgments were in full force and unpaid; that on April 22, 1921, and, for many years prior thereto, John P. Stauffer was the owner of certain real estate which he, on said day, with the purpose and intent of defrauding each of the plaintiffs therein named, conveyed to Stanford Willard for the "nominal consideration" of $13,000, although, in fact, no consideration had been paid, the insolvency of Stauffer being also alleged, and asked judgment for the amount due Loucks on his note, that the conveyance to Willard be set aside as to claims of all the plaintiffs, and that the real estate in question be subjected to sale to satisfy said several judgments. On May 2, 1924, the court rendered a judgment in favor of Loucks for the amount due him and decreed that the conveyance from Stauffer to Willard be set aside and vacated as to all of the plaintiffs therein named, and decreeing that Willard had a first lien on the land for $13,380, "and that said real estate, or so much thereof as may be necessary to pay and satisfy the claims, demands and judgments of the plaintiffs and each of them, be sold as other lands are sold upon execution,

and that the proceeds arising from such sale be first applied to the payment of plaintiffs' claims and judgments with interest thereon, . . . and the balance, if any, be paid to the person or persons lawfully entitled thereto, the said sale to be made subject to the lien of said defendant Stanford Willard." As a part of the finding upon which said decree was based, the court found that when Willard accepted said conveyance, he "knowingly took and accepted the same without paying any sufficient and adequate consideration therefor." The issues in said cause consisted of the complaint and answer of general denial, and the above-mentioned decree was rendered upon said issues.

The court further found that the deed from Stauffer to Willard mentioned in said decree was executed April 22, 1921, that, since its execution, Willard had paid $37.10 for insurance and $851.27 for taxes; that, from April 22, 1921, to November 15, 1925 (the latter date being the day on which the complaint in the instant case was filed), Willard had been in possession of the land and had received the income therefrom. On April 5, 1924, the defendant Bechtel recovered a judgment for $295.81 against Stauffer; on March 27, 1922, the defendant Martin also recovered a judgment against Stauffer for $679, each of said last-named judgments being rendered in the Elkhart Superior Court; that neither Martin nor Bechtel was a party to the action of *Loucks* v. *Stauffer* in which the conveyance from Stauffer to Willard was set aside. The said $13,380 plus interest thereon and the sums paid by Willard for insurance and taxes and interest thereon amounted to $16,605.07.

The above special finding was signed by the judge and filed March 16, 1927, and, on July 6, 1928, the plaintiff below, appellant herein, filed a written application alleging that the trial judge had had an issue of law under advisement and that he had failed to determine such

issue within 90 days after having taken the same under advisement, and asked that said issue be withdrawn from the regular judge and that a special judge be appointed (§603 Burns 1926). This application was denied, and, on August 6, 1928, the court concluded as a matter of law that the plaintiff take nothing, and judgment followed, hence this appeal.

The errors assigned which we need to consider relate to the overruling of the motion to withdraw the submission and to the correctness of the conclusion of law. The death of the plaintiff and defendant Benjamin Lechlitner was suggested, and Anna Willard, executrix of the estate of the plaintiff, was substituted as plaintiff, while Amanda Lechlitner, as administratrix of the estate of Benjamin Lechlitner, was substituted as a defendant.

Appellant's first contention is that the court committed a reversible error in overruling her application to withdraw an issue of law from the trial judge and asking for the appointment of a special judge to take jurisdiction of the cause. Section 603 Burns 1926, Acts 1923, ch. 83, p. 254, provides that "if the judge shall fail to determine any issue of law or fact which has been taken under advisement within ninety days after having taken the same under advisement, upon written application of any of the parties to the action, or their attorneys of record, . . . the submission of said issue shall thereupon be withdrawn and the judge before whom said cause is pending shall be disqualified to hear or determine any of the issues in said cause, and a special judge shall be appointed to take jurisdiction thereof." We call attention to the fact that the court had heard all of the evidence and had signed and filed a special finding of facts. The correctness of the facts as found stands unchallenged. The only thing that remained to be done was for the court to state its conclusions of law upon the

facts and to render judgment in accordance with such conclusions.

If this cause should be reversed because of this alleged error, it would have to be remanded with directions to sustain the application and to appoint a special judge who would then be required to state his conclusions of law upon the facts already found and to render a judgment thereon. There would be no new trial, as judgments when reversed, are reversed only to first error, §727 Burns 1926.

Courts do not reverse judgments for errors shown to be harmless, or where the party complaining could sustain no injury. In other words, to warrant a reversal, there must be a combination of error and injury. Errors which are fatal are such only as may reasonably be held to have worked injury to the cause of the party. *Brewer* v. *Ring* (1919), 177 N. C. 476, 99 S. E. 358; *Windsor* v. *Carlton* (1923), 136 Va. 652, 118 S. E. 222; *Rodetsky* v. *Nerney* (1925), 72 Cal. App. 545, 237 Pac. 791.

"In fact," said the court in *In re Ross* (1921), 182 N. C. 477, 109 S. E. 365, "it is now the settled rule of appellate courts that verdicts and judgments will not be set aside for harmless error, or for mere error and no more. To accomplish this result, it must be made to appear not only that the ruling complained of was erroneous, but that it was material and prejudicial, amounting to a denial of some substantial right. Our system of appeals, providing for a review of the trial court on questions of law, is founded upon sound public policy, and appellate courts will not encourage litigation by reversing judgments for slight error, or for stated objections which could not have prejudiced the rights of appellant in any material way." This doctrine is so firmly established by the decisions of our Supreme Court and of this court

that we need cite no further authorities in support thereof.

.If no correct conclusion of law could have been stated other than the one which the court did state, and no judgment could have been properly rendered except the one that was rendered, it would be unreasonable, futile and absurd to reverse this cause, when the only judgment that could thereafter be rendered would be that appellant take nothing. Conceding that the facts bring this case within the provisions of §603, *supra*, and that it was error to overrule the application to withdraw the issue from the trial judge, we hold such action harmless, for the reason that no correct conclusion of law could have been stated except the one which was stated, and that, under the facts found, appellant was not entitled to a conclusion of law or judgment in her favor.

The facts as found present an unusual and peculiar situation. We have the owner of a tract of land going into a court of equity for the purpose of foreclosing an alleged "lien" on his own land when there is no claim or debt owing him by anybody. Appellant makes no claim that the defendants or any of them are, or ever were, indebted to her or to her deceased husband. The only reasonable inference to be drawn from the finding and decree of the court in the Loucks case setting aside the conveyance from Stauffer to Stanford Willard is that there was some evidence in that case to the effect that the grantee in that conveyance had paid Stauffer $13,380 for the land; that Stauffer made the conveyance to defraud his creditors; and that Willard, in the language of the court, "knowingly took and accepted the same without paying any sufficient and adequate consideration therefor." It would seem, however, that the court was of the opinion that if the land was sold to satisfy and pay the creditors of Stauffer, Willard should

be protected to the extent of the purchase price actually paid by him. If the land was not sold for that purpose, the conveyance remained in full force and effect, and, having the title to the land, he needed no protection. His right to any relief was dependent on the property being sold on execution to satisfy several judgments against Stauffer. Under no other circumstances was he entitled to any relief, and he was given all that he had any right to expect or claim. Equity demanded and required no more. What more could he have asked than to be protected against a sale of the land and the loss of his money? He was given no judgment against any one. In no manner did he have a lien that was capable of being foreclosed or inforced before he had lost his title by virtue of an execution sale. He had no right to force a sale of his own land. The decree declaring the conveyance void as to the creditors named therein was dated May 2, 1924. About 14 months later, and while the owner of the land by virtue of a fraudulent conveyance which he knowingly took and accepted, without paying a sufficient and adequate consideration therefor, he goes into a court of equity for relief. By so doing, he admits that the former decree failed to give him any method of carrying it into execution. When he filed his complaint in the instant case, he assumed the burden of proving such a state of facts as in good conscience would require the chancellor to grant him additional relief. His complaint is founded upon the theory that he had a *judgment* against the defendants in the instant case; that he has some kind of a *lien* upon his own land which should be foreclosed. But no facts are found to sustain either of his claims.

A lien has been defined as a claim which one person holds on the property of another as a security for an indebtedness or charge. *Hubble* v. *Berry* (1913), 180 Ind. 513, 103 N. E. 328. It follows

that where there is no debt or charge a court cannot, in the absence of law, declare a lien to exist, much less create one. As was said in *Frost* v. *Atwood* (1888), 73 Mich. 67, 41 N. W. 96, 16 Am. St. 560: "No rule is better settled than that liens can only be created by agreement, or by some fixed rule of law. It is not one of the functions of courts to create liens." To the same effect, see *McEwen Mfg. Co.* v. *Anardarko Producer's Oil, etc., Co.* (1925), 115 Okla. 127, 241 Pac. 493; *Hollis* v. *Isbell* (1921), 124 Miss. 799, 87 So. 273, 20 A. L. R. 244.

*Fowler* v. *Enriquez* (1922), 56 Cal. App. 107, 204 Pac. 854; *West* v. *Madansky* (1920), 80 Okla. 161, 193 Pac. 439; and *Rosenthyne* v. *Mathews-McCulloch Co.* (1917), 51 Utah 38, 168 Pac. 957, cited by appellant, are not in point. In each of those cases, there was a cancellation or rescission of a conveyance because of fraud or undue influence, and where one of the parties had paid money to or for the benefit of the other party and which the latter was bound to return. In each of the cases, there was a debt to be secured. If Willard had brought an action against Stauffer to cancel and rescind the conveyance and there had been a decree restoring the title to Stauffer, it would have been quite proper for the court to have declared that, as against Stauffer, Willard had a lien on the land for the amount paid for such conveyance and to have entered a decree foreclosing such lien. In the instant case, the conveyance, as between Stauffer and Willard, is in full force and effect. Acting upon the theory that he was entitled to more than he was given by the first decree, Willard returned to a court of equity for additional relief.

The Supreme Court of the United States, in *Lawrence Mfg. Co.* v. *Zanesville Cotton Mills* (1891), 138 U. S. 552, 11 Sup. Ct. 402, 34 L. Ed. 1005, in discussing the rules applicable in such cases, said: "Where a party returns to a court of chancery to obtain its

aid in executing a former decree, it is at the risk of opening up such decree as respects the relief to be granted on the new bill. . . . Inasmuch as plaintiff came into a court of equity to have the benefit of the former decree, the court was at liberty to inquire whether circumstances justified the relief. . . . Indeed, it would seem to have devolved upon it to show that the decree was a right decree." And, after citing cases in support of the text, the court said: "This rule was much considered and applied in *Wadhams* v. *Gay*, 73 Ill. 415, and approved by this court in *Gay* v. *Parpart*, 106 U. S. 679 (27 L. Ed. 256)," where the court, in applying the rule, quoted with approval from *Wadhams* v. *Gay, supra,* the following: "We do not regard that it militates with the doctrine of the conclusive effect of what is *res adjudicata,* that where there is an incomplete decree, and it is ineffective for want of the provision of any means for its execution, and an application is made to a court of equity to supply the imperfection so as to render the decree effective, that then it is admissible to look at the real nature and character of the decree, as it may appear in the light of surrounding circumstances, for the purpose of determining whether there is such an equitable ground for action as will move a court of equity to interpose. Equity will penetrate beyond the covering of form, and look at the substance of the transaction, and treat it as it really and in essence is, however it may seem." *Wadhams* v. *Gay, supra,* at page 435. And, in *Hultberg* v. *Anderson* (1911), 252 Ill. 607, 97 N. E. 216, 220, it is said: "The rule is established by the decisions of this court and elsewhere, that when a bill is filed to carry into execution a former decree that is incomplete or defective to such an extent that it cannot be executed without a further decree curing the defect and making it complete, the court may, and will, inquire whether the decree is just and equitable. But this rule

has no application to decrees that are complete and perfect and free from inherent defects which prevent their execution." The same rule was recognized and applied in *Terry* v. *McClintock* (1879), 41 Mich. 492, 2 N. W. 787, where the court, at page 502, said: "The complainant in such a bill cannot impeach such a decree, because that would be in direct contradiction of the theory of his proceeding. . . . In fine it seems to have become settled that the court, acting on the maxim that he who seeks equity ought to do it, will meet the call made by the complainant on its justice to execute its previous decree by an application of its equitable discretion to the circumstances to see whether the decree is one which it would be just to enforce; and if not, then to change it to meet the requirements of equity, or refuse assistance altogether. But the court will not change the decree or withhold assistance under such a bill except in very unusual cases." To the same effect is *Pinel* v. *Pinel* (1914), 178 Mich. 596, 146 N. W. 117. One of the leading English cases dealing with this question is *Hamilton* v. *Houghton* (1820), 2 Bligh. 169, 193, 4 Reprint 290, where Lord Redesdale said: "The party who comes into a court of equity to have the benefit of a former decree, must show that it was a right decree, if the decree appears to be erroneous, the court cannot carry it into execution." See, also, *Attorney-General* v. *Day* (1748), 1 Ves. 218; *O'Connel* v. *McNamera* (1843), 3 Dr. War. (Irish Ch. Rep.) 411; *State, ex rel.,* v. *Mayor, etc., of Mobile* (1854), 24 Ala. 701; *Jenkins* v. *International Bank* (1884), 111 Ill. 462; *Lancaster* v. *Snow* (1900), 184 Ill. 534, 56 N. E. 813; *Teel* v. *Dunnihoo* (1907), 230 Ill. 476, 82 N. E. 844, 120 Am. St. 319; *Maas* v. *Lonstorf* (1908), 166 Fed. 41, 91 C. C. A. 627.

Neither appellant nor her deceased husband had any judgment or claim of any kind or character against any

of the defendants in the instant case, and was entitled to no relief either at law or in equity as to any of them. The court did not err in its conclusion of law. Under the facts, no judgment or decree of any kind could have been legally rendered in favor of appellant. So, if it be conceded that the court erred in the refusal to appoint a special judge, such action was harmless and resulted in no injury to appellant, for the reason that, if the cause was reversed, conclusions of law would have to be stated in favor of appellees and a decree rendered in accordance therewith.

Affirmed.