IN RE ORDINANCE NO. 464 OF COMMON COUNCIL OF
CITY OF JASPER ET AL. *v.* THE CITY OF JASPER.

[No. 19,223. Filed September 18, 1961. Rehearing denied
October 17, 1961. Transfer denied February 1, 1962 with
opinion, 179 N. E. 2d 749.]

*Arthur S. Wilson,* of Princeton, for appellants.

*Louis A. Savage, Clemence A. Nordhoff,* both of Jasper, and *Norbert T. Schneider,* of counsel, of Huntingburg, for appellee.

MYERS, J.—This is an appeal from a judgment affirming an annexation ordinance passed and adopted by the Common Council of the City of Jasper, Indiana. Appellant Kluemper is one of ninety-three remonstrators who filed what is designated by statute as an "appeal" to the Dubois Circuit Court, pursuant to the provisions of §48-702, Burns' Ind. Stat., 1950 Replacement (Supp.), wherein they resisted and attacked the annexation by written remonstrance. Appellee filed an answer to this, putting the cause at issue. A trial was held by the court without a jury. Pursuant to a written request filed by appellants before trial, the court made the following special findings of facts and conclusions of law:

"1. The Court finds that the City of Jasper, Dubois County, Indiana, on the 12th day of June, 1957, annexed the territory described therein to the City of Jasper by the adoption of Special Ordinance No. 464 for the purpose of annexing territory.

"2. That an appeal was taken from such annexation.

"3. That the appeal was taken by filing of a remonstrance, and the Court finds that the appeal and remonstrance is properly before the Court for determination.

"4. The Court further finds that the evidence in this cause demonstrates the presence of the following conditions considered to be the pri-

mary determinants of the merit of the annexation:

"(a) The annexation sought in Ordinance No. 464 is in the best interest of the City and of the territory sought to be annexed.

"(b) The area is urban in character, being an economic and social part of the annexing city.

"(c) The terms and conditions set forth in the ordinance are fair and just.

"(d) The city is financially able to provide municipal services to the annexed area within the reasonably near future.

"(e) The area sought to be annexed, if undeveloped, is needed for development of the City in the reasonably near future.

"(f) The lines of the annexation are so drawn as to form a compact area abutting the municipality.

"5. The court further finds that the primary determinants enumerated above applies to the annexation in this cause, and the Court further finds that the annexation should take place notwithstanding the remonstrance, or the provisions of any other statute of this state.

## "CONCLUSIONS OF LAW

"1. The law is with the City of Jasper, Dubois County, Indiana, and the territory sought to be annexed in Ordinance No. 464 should be annexed and become a part of said City of Jasper, Dubois County, Indiana."

Judgment was entered as follows:

"IT IS, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED by the Court that the territory sought to be annexed under Ordinance No. 464 of the City of Jasper, which ordinance is in words and figures as follows, to-wit:

## " 'ORDINANCE NO. 464

" 'An Ordinance of the City of Jasper, Indiana, annexing platted and unplatted territory to said City of Jasper, containing territory contiguous to the present corporation line.'

" 'WHEREAS, it is deemed to be in the public interest to annex to the City of Jasper, Indiana, certain contiguous territory and to be advantageous to the general public welfare and benefit of the citizens of said City that said property be annexed; now, therefore,

" 'BE IT ORDAINED BY THE COMMON COUNCIL OF THE CITY OF JASPER, INDIANA, with the approval of the Mayor of said City, that:

" 'Section 1. The following described platted and unplatted territory be and the same is hereby annexed to and delcared to be a part of said City, to-wit:

" 'Lands North of Jasper—platted and unplatted territory:

" 'Part of sections 14, 23, 25 and 26 in township 1 south, range 5 west and bounded as follows: Beginning at the NW corner of Northwood Park Addition to Jasper, Indiana, being 15 feet south of the NW corner of the SW 1/4 of the NW 1/4 of section 23, township 1 south, range 5 west, thence north along the section lines approximately 2,230 feet to a point 906 feet north of the center line of the Portersville Road (section line), thence east approximately 4,500 feet parallel to and 230 feet north of the north line (and extensions thereof) of O. Eckerle's Victory Villa 6th Addition to Jasper, Indiana, to a point 906 feet north and 208.7 feet east of the southeast corner of SW 1/4 SE 1/4 section 14, thence south approximately 4,830 feet parallel to and 208.7 feet east of the center line of Calumet Lake Road (quarter section line) to a point 208.7 feet east of the southeast corner of the NW 1/4 SE 1/4 section 23, thence southeasterly approximately 1,500 feet to the NE corner of the Calumet Lake tract being approximately 400 feet north of the southeast corner of section 23, thence westerly along the present corporation limits to the place of beginning.

" 'Also the following tract:

" 'Beginning at the SE corner of the Calumet Lake property being a corner of the present corporate limits, thence south approximately 1,300

feet parallel to and 198 feet east of the west line of section 25 to the present corporation line of said city, thence westerly, northerly and easterly to the place of beginning. (The above described includes the following platted areas: Theo. Reyling's First Addition; O. Eckerle's Victory Villa 6th Addition; North Side Addition; and all that part of Skyline Subdivision heretofore unincorporated in said city.)

" 'Section 2. That immediately upon the passage of this ordinance the city clerk is hereby authorized and directed to publish a copy of this ordinance for two consecutive weeks in the Dubois County Daily Herald, a daily newspaper of general circulation published in the City of Jasper, Indiana.

" 'Section 3. Any and all ordinances and parts of ordinances in conflict herewith are hereby expressly repealed.

" 'Section 4. This ordinance shall take effect from and after its passage and approval by the Mayor.

" 'Passed and adopted by the Common Council of the City of Jasper, Indiana, this 12th day of June, 1957.

" 'ATTEST:   " 'EDWARD J. LOREY,
" 'JULIUS GIESLER   " 'MAYOR
" 'Clerk-Treasurer,' "

be and it is now annexed and shall thereafter be deemed a part of the Civil City of Jasper, Indiana.

"IT IS FURTHER ORDERED That the remonstrators and appellants herein shall pay the costs of this action, and the Clerk of this Court be and he is now directed and ordered to forthwith deliver a certified copy of this judgment to the Clerk-Treasurer of the City of Jasper, Indiana, who shall record the same in the ordinance record and make a cross-reference to the page thereof upon the margin where such original ordinance was recorded.

"Dated: April 22, 1958

"/s/ Philip D. Waller
"SPECIAL JUDGE
"DUBOIS CIRCUIT COURT"

A motion for new trial was filed by appellant Kluemper on behalf of himself and the other remonstrators, wherein, in substance, it was charged that the decision and Findings of Facts numbered 4 (a), 4 (b), 4 (c), 4 (d), and 4 (e) were not sustained by sufficient evidence and were contrary to law; that Finding of Fact No. 5 was contrary to law; that the court erred in overruling an application and motion to withdraw the submission of the cause from the trial judge, in accordance with the provisions of Rule 1-13 of the Indiana Supreme Court.

The motion for new trial was overruled and this appeal followed.

The assignment of errors is principally based upon the overruling of the motion for new trial and a claim that the court was without jurisdiction to determine the issues and enter judgment.

The controlling statute in this case is §48-702, Burns' Ind. Stat., 1950 Replacement (Supp.), *supra*, which sets forth certain primary determinants of an annexation's merits, the pertinent parts of which read as follows:

"Such evidence demonstrating the presence of the following conditions shall be considered the primary determinants of the annexation's merit:

"(a) The annexation is in the best interests of the city and of the territory sought to be annexed.

"(b) The area is urban in character, being an economic and social part of the annexing city.

"(c) The terms and conditions set forth in the ordinance are fair and just.

"(d) The city is financially able to provide municipal services to the annexed area within the reasonably near future.

"(e) The area sought to be annexed, if undeveloped, is needed for development of the city in the reasonably near future.

"(f) The lines of the annexation are so drawn as to form a compact area abutting the municipality."

As can be seen from the special findings, the court found that such primary determinants enumerated above applied to this annexation.

In this type of case the powers of the court are limited to ascertaining whether the annexation will be for the interest of the city and will cause no manifest injury to the persons owning property in the territory. Pursuant to statute, the court must determine whether the conditions imposed are met. If there is evidence of probative value in the record to support the court's findings thereon, such findings will not be disturbed on appeal. *City of Aurora* v. *Bryant* (1960), 240 Ind. 492, 165 N. E. 2d 141.

The evidence most favorable to appellee in the record reveals that the ordinance adopted sought to annex two separate tracts of ground on the northside of the City of Jasper, one of them known as the Gutzweiler Block and containing about 45 acres and the other containing about 600 acres. While the two tracts are not joined to each other, they are located in the same general region, being separated by an area which juts northward from the city, known as Calumet Lake, and which area is within the present city limits. The tracts are contiguous to the corporate limits of Jasper and form a compact area abutting the municipality.

Among the witnesses who testified on behalf of appellees were the Dubois County Surveyor, the City Health Officer, members of the Utility Board and City Plannning Board, the Mayor, the Chiefs of the Police and Fire Departments, the Superintendents of the Sewage Treatment Plant and the Municipal Gas

Utility, a Sanitary Engineer for the Indiana State Board of Health, a Professional Planning Consultant, the Secretary of the City School Board, and several builders, manufacturers, and a farmer.

In regard to Special Finding 4 (a), there was evidence that the annexation would increase the city's general tax levy revenues based upon an increase in assessed valuation due to the inclusion of the properties of the annexed area; that there would be an increase in special revenues to the city from motor vehicle taxes and alcoholic beverage taxes from the State of Indiana; that there were unsanitary conditions in part of the territory because of an open ditch with sewage draining into it seeping up through the ground from septic tanks, and because in places the soil was not suitable for sewage disposal by septic tanks. It was stated that the city could and would construct adequate sewers to remedy this situation if the area were incorporated in the city.

As to Special Finding 4 (b), there was evidence that the annexed tracts consisted of an area 60 to 65 per cent. unplatted and described as "agricultural land." The remaining area was platted and used for residential, commercial, and industrial purposes. There were streets in the platted areas; and some city utilities, including gas, water, and electricity, were used therein. There was evidence that residents within the area were employed or operated their businesses within the city limits of Jasper; that they did their shopping, attended churches, and sent their children to schools, within the city.

Appellants vigorously argue that the majority of the territory annexed is not urban in character, based upon the fact that most of the property was "agricultural land" which was not cultivated. How-

ever, Jerome Schneider, the County Surveyor and a Consulting Civil Engineer, one of appellee's chief witnesses, while recognizing that 60 to 65 per cent. of the land was pasture land, grazing land, and uncultivated, claimed that "potentially it was urban in character." He contended that all the territory was being developed for residential and commercial use rather than as farm land. There was testimony from a builder that the unplatted part was more suitable for residential development than development as farm land and that there was a demand for it as such.

Pertaining to Special Finding 4 (d), there was testimony by officers and members of every major department of the city to the effect that every needed service, including police and fire protection, gas and electricity, street lighting, sewage disposal, and trash collection, could be supplied to the annexed area within a reasonable time in the near future; that plans had been prepared for the extension of water mains into the annexed area to remedy an inadequate water supply therein, and that funds were available for this, but that they could not be used as long as the area was outside the city limits.

As to Special Finding 4 (e), various builders and land developers testified that homes were being built in the annexed area and that there was a demand for more of such provided services, such as sewers and water. They stated that the then present value of the area was in its development as residential property rather than as farm land. There was also evidence that industry could not expand within the city limits, but was moving into the annexed area. A professional planning consultant had been employed by the city for a period of about two years, who had prepared maps and a master plan for the City Plan Com-

mission as a guide for future municipal development. It was his opinion that the city would need the annexed areas for future residential, commercial, and industrial growth.

Appellants raised no question concerning Special Finding 4 (f).

Witnesses who testified for the remonstrators included a City Councilman, the local Manager of the Dubois Rural Electric Co-op., being a part of the Rural Electric Administration, a Consulting Engineer, the President of a Land Development Corporation, and the son of one of the remonstrators. It is to be noted that not one of the landowners who signed the remonstrance, including the only-named appellant herein, testified at the trial. Their testimony in general was contrary to appellee's evidence in regard to the size and nature of the agricultural land involved in the territory (they claimed it was 70 per cent. or more in area), the need for additional services, the ability of the city to render them, the unsanitary conditions alleged to be existent, and the residential development taking place. In view of this fact, this court will not weigh the evidence, and we shall consider only the evidence most favorable to the appellee herein. We find there was sufficient evidence of probative value to support the findings of fact made by the trial court.

Appellants contend that there are no facts tending to support Finding 4 (c), as there were no terms or conditions set forth in the ordinance. Appellee admits that there were no express terms or conditions, but says that only such as are "required and implied by law could therefore exist," and that, "all other conditions being sufficiently demonstrated, it would nat-

urally follow that annexation would be fair and just."

We are of the opinion that this particular determinant, requiring that "the terms and conditions set forth in the ordinance are fair and just" (§48-702, Burns' Ind. Stat., 1950 Replacement [Supp.], *supra*, must be considered together with §48-701 Burns' Ind. Stat., 1950 Replacement (Supp.), wherein the common councils of cities are given power to annex territory by ordinance. The pertinent parts of this section read as follows:

"Said common council may also, by separate ordinance, not purporting to define the entire boundaries of such city annex contiguous territory, whether platted or not, to such city, and may include such terms and conditions, as hereinafter defined, as may be deemed just and reasonable by said common council. . . .

"The terms and conditions applicable to any such annexation may relate to any matter reasonably and fairly calculated to render such annexation just and equitable both to the city, its property owners and inhabitants, and to the annexed territory, its property owners and inhabitants, including, but not restricted to, such matters as (a) postponing the effective date of such annexation, (b) impounding in a special fund in whole or in part the municipal property taxes to be imposed upon the annexed territory after annexation shall take effect, in such amount and for such period of time, not to exceed three [3] years, as said common council may determine, and using such impounded taxes solely for the benefit of such annexed territory, its property owners and inhabitants, in the extension of municipal services and benefits and the making of municipal or public improvements in the annexed territory, or (c) establishing equitable provisions for the future management and improvement of the annexed territory and for the rendering of needed services."

The wording of the statute is such that it is not mandatory for the ordinance to contain specific terms or conditions relating to the annexation. The use of the word "may" is permissive. Accordingly, the common council is authorized to attach conditions and terms to an annexation in the nature of those designated in the statute above, if such are deemed necessary, but is not required to do so by the statute.

The ordinance involved herein merely called for the annexation of certain specified territory without any qualification. This being so, the only terms or conditions which could exist must be by implication, i.e., the annexation must be just and equitable to all property owners and inhabitants within the city and within the annexed territory, as well as to the city itself and the annexed property. As we have seen, there was sufficient evidence from which the court could have found this to be a fact, so there was no error committed in making this finding as it stands.

Appellants contend that the decision is contrary to law because the findings of facts are not sustained by sufficient evidence, but say that substantially the same questions are raised in this assignment of error as in the charge of insufficiency of the evidence which we have just considered. In accordance with our holding therein, we find that the decision was not contrary to law.

Appellants have spent a good portion of their argument in attempting to show that the trial court lacked jurisdiction to determine the issues and to enter judgment. This was based upon an application and motion made by appellants for an order withdrawing the submission of the cause from the Special Judge. It was urged that the Special Judge had taken

this case under advisement on the 15th day of January, 1958, and that he held the same under advisement for more than ninety days without rendering a decision. It was alleged that this was contrary to the provisions of Rule 1-13 of the Supreme Court of Indiana. It is contended that the trial judge was without jurisdiction to continue in the case after appellants filed their application.

Rule 1-13 is commonly known as the "Lazy Judge Rule," and reads as follows:

"Whenever any issue of law or fact shall hereafter be submitted to the court for trial, ruling, or decision, and the judge shall take the same under advisement, the court shall not hold the same under advisement for more than ninety (90) days; but if the court wherein said issues are pending be then in vacation, he shall make his determination therein on the first day of the next suceeding term. Provided, that if the judge shall fail to determine any issue of law or fact within the time above reserved, then upon written application of any of the parties to the action or their attorneys of record duly filed in the office of the Clerk of said court and called to the attention of said judge before the announcement of the decision of the issue in question, the submission of said issue shall thereupon be withdrawn and the judge before whom said cause is pending shall be disqualified to hear or determine any of the issues in said cause, and a special judge shall be appointed to take jurisdiction thereof under the same rules and regulations prescribed by law in cases where the judge is disqualified for hearing a given cause.

"With respect to any such issues under advisement on the date of the adoption of this rule, the ninety (90) day limitation shall begin to run from the date of its adoption. Adopted April 30, 1952."

It appears from the record that prior to trial, the remonstrators had filed a request for special findings

of facts and conclusions of law. On January 15, 1958, the trial was concluded and final arguments were heard. The record reveals the court's entry for that day was to the effect that it "now takes this matter under advisement." On February 1, 1958, the Special Judge addressed correspondence to both parties requesting them to submit drafts of proposed findings of facts and conclusions of law. This was done in accordance with Rule 1-7B of the Supreme Court of Indiana, which pertains to special findings of facts, and reads in part as follows:

"The court may . . . in any case where special findings of facts and conclusions of law are to be made, *require* the attorneys of the parties *to submit* to the court a draft of findings of facts and conclusions of law which they propose or suggest that the court make in such a case." (Our emphasis.)

On February 7, 1958, the attorney for appellee mailed his suggested draft to the Special Judge. On February 21, 1958, appellants' attorney submitted his proposed draft.

The Special Judge refused to disqualify himself, overruled appellants' motion, and, on April 22, 1958, handed down his decision. This is claimed as error. Appellants contend that the cause was "submitted" on January 15, 1958, and that, consequently, when no decision had been rendered ninety days thereafter, they were within their rights to file their application to withdraw the submission from the Special Judge, pursuant to the provisions of Rule 1-13. Having done this properly, they argue that the Judge could exercise no further jurisdiction in the matter except to proceed to appoint a Special Judge.

Appellee takes the position that the cause was not "submitted" until appellants had delivered their

draft of the proposed findings of facts and conclusions of law to the Special Judge, and that being the 21st of February, 1958, the ninety days did not start to run until then.

Rule 1-13 is substantially the same as a portion of section 394, chapter 38, Acts 1881 (Spec. Sess.), as amended by the Acts of 1923, chapter 83, section 1, being a part of §2-2102, Burns' Ind. Stat., 1946 Replacement. That portion of the statute was declared unconstitutional by the Indiana Supreme Court in 1946 as being an invasion and interference of the judiciary by the legislative branch of government. *State ex rel. Kostas* v. *Johnson* (1946), 224 Ind. 540, 545, 69 N. E. 2d 592, 594. It is noted that the Supreme Court in its opinion thought it significant that "never in the several cases involving this statute which have been before this court and the Appellate Court has the statute been given literal effect." It then cited cases interpreting the statute which held that it was directory only, *Jones* v. *Swift et al., Executors* (1884), 94 Ind. 516, and *Smith* v. *Uhler* (1884), 99 Ind. 140, and that it created only a procedural privilege which could be waived. *State ex rel.* v. *Wirt* (1932), 203 Ind. 121, 177 N. E. 441.

Such apparently was the feeling of this court in the case of *Willard, Exrx.* v. *Stauffer* (1930), 91 Ind. App. 119, 170 N. E. 332, where it was held that a cause would not be reversed on appeal for failure of the trial judge to withdraw the issue upon application and submit the same to a Special Judge, even if error, where the conclusions of law finally given were the only conclusions possible.

In interpreting Rule 1-13, the Supreme Court in recent decisions has held that petitions for writs of mandate and prohibition will not lie for alleged viola-

tions thereof by the trial judge, stating that such are matters for appeal. *State ex rel. Beatty* v. *Nichols, Sp. J., etc.* (1954), 233 Ind. 432, 120 N. E. 2d 407; *State* v. *Fulton Circuit Court* (1960), 240 Ind. 288, 164 N. E. 2d 111. This would indicate that the Supreme Court does not consider the rule to be jurisdictional in effect.

However, in interpreting the old statute, our court stated that two prerequisites were needed before the provisions thereof could be invoked: (1) The matter in question had to be submitted to the trial judge, and (2) the judge must take the same under advisement. *Conover* v. *Cooper* (1925), 83 Ind. App. 675, 679, 145 N. E. 779.

The record here indicates an entry by the trial judge that the cause had been taken under advisement on January 15, 1958. It also shows that two weeks later the Judge requested each party to "submit" drafts of proposed findings of facts and conclusions of law. We can only speculate as to why the Judge waited that length of time before making his request. He may have overlooked the fact that a written request for special findings of facts and conclusions of law had been filed before trial, and upon being apprised of this acted promptly to notify the parties pursuant to Rule 1-7B, or, otherwise, after studying the case, he may have decided that he would rather have the assistance of the attorneys in preparing his findings and conclusions. In either event, could it be said that the matter had been submitted to him before he had received the requested drafts of the proposed findings and conclusions from both parties?

In general, within the meaing of a staute or rule of court permitting voluntary nonsuits, dismissals, or

discontinuances without prejudice before final submission, the term "final submission" of a case contemplates the submission on both the law and the facts, and is a final submission only *when nothing remains to be done to render it complete*. 27 C. J. S., Dismissal & Nonsuit, §20, p. 347; 17 Am. Jur., Dismissal, etc., §§33, 34, pp. 122, 123. It has been stated that to "submit" a controversy or action in court means to refer or to place it before the court for determination. *State* v. *Kitchin* (1955), 282 S. W. 2d (Mo.) 1, 3. *Unless the case is left open for some further act of the parties*, "submission" is final when evidence and arguments are finished or waived, and the court as the trier of facts has taken the case for decision. *Payne* v. *White* (1956), 288 S. W. 2d (Mo. App.) 6, 7.

We think Rule 1-13 falls within these defintions, and we are of the opinion that after argument in this case and the entry made by the Special Judge, indicating he was taking the matter under advisement, on January 15, 1958, there was still something further to be done. The parties had to "submit" their drafts of proposed findings of facts and conclusions of law pursuant to Rule 1-7B. The cause was not finally "submitted" therefore until this had been done. When the appellants presented their draft to the court on February 21, 1958, the cause was finally "submitted" and there was nothing remaining to be done. Thus, the Special Judge committed no error in overruling appellants' motion and refusing to disqualify himself.

Judgment affirmed.

Ryan, P. J., and Ax and Cooper, JJ., concur.

NOTE.—Reported in 176 N. E. 2d 906. Transfer denied 179 N. E. 2d 749.